UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| POWERDSINE, INC. and POWERDSINE, LTD., | ) Case No. 07-CV-2490 (SJF) (WDW) |
| | ) |
| Plaintiffs, | ) ECF Case |
| | ) |
| -against- | ) **MEMORANDUM OF LAW IN** |
| | ) **SUPPORT OF INDIVIDUAL** |
| BROADCOM CORPORATION, MARTIN | ) **DEFENDANTS MARTIN MCNARNEY** |
| MCNARNEY, and DOUGLAS WANG, | ) **AND DOUGLAS WANG'S MOTION TO** |
| | ) **DISMISS FOR LACK OF PERSONAL** |
| Defendants. | ) **JURISDICTION AND TO QUASH FOR** |
| | ) **INSUFFICIENICY OF SERVICE OF** |
| | ) **PROCESS** |
| | ) |
| | ) |

**TABLE OF CONTENTS**

**Page**

I. ARGUMENT ............................................................................................................... 1

    A. THE COURT SHOULD DISMISS THE COMPLAINT AS TO INDIVIDUAL DEFENDANTS MARTIN MCNARNEY AND DOUGLAS WANG FOR LACK OF PERSONAL JURISDICTION ................... 1

        1. The Individual Defendants Have Not Maintained "Continuous and Systematic" Contacts With The Forum State, Thus This Court Cannot Exercise General Personal Jurisdiction Over Them ....................... 3

            a. Plaintiffs Cannot Establish General Jurisdiction Over McNarney Based On Random And Sporadic Contacts With New York Over A Two-Year Period ............................................... 4

            b. Plaintiffs Cannot Establish General Jurisdiction Over Wang Based On One Contact With New York Over A Two-Year Period ............................................... 6

        2. No Nexus Exists Between Plaintiffs' Causes of Action And The Individual Defendants' In-State Conduct Thus This Court Cannot Exercise Specific Personal Jurisdiction Over Them .................................. 7

            a. McNarney's Contacts With New York Are Insufficient To Establish Specific Jurisdiction Because No Nexus Exists Between McNarney's In-State Conduct and Plaintiff's Allegations ................................................................................ 10

            b. Wang's Contacts With New York Are Insufficient To Establish Specific Jurisdiction Because No Nexus Exists Between Wang's In-State Conduct and Plaintiff's Allegations ................................................................................ 11

        3. As A Foreign National, Wang Should Be Dismissed Because No Conceivable Basis Exists For Wang To Be Subject To Jurisdiction In The United States And, Thus, It Would Be Unreasonable, Unfair And Contrary To Law To Subject Wang to Jurisdiction In New York ............................................................................................... 13

III. CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987) ............................................ 13, 14

Besicorp Group, Inc. v. Crown Life Insurance Co., 1989 WL 53019 (N.D.N.Y.
    1989) ........................................................................................................................................ 8

Burger King v. Rudzewicz, 471 U.S. 462 (1985) ..................................................................... 2, 7, 8

Central Locating Service, Ltd. v. Southern Bell Telephone & Telegraph, 1990
    WL 178995 (N.D.N.Y. 1990) ................................................................................................. 8

Creative Socio-Medics, Corp. v. City of Richmond, 219 F.Supp. 2d 300 (2002) ......................... 8

Hanson v. Denckla, 357 U.S. 235 (1958) .................................................................................. 1, 8

Helicopteros Nacionales De Columbia, S.A. v. Hall, 466 U.S. 408 (1984) ........................... 2, 3, 6

In re Royal Group Technologies Securities Litigation, 2005 WL 3105341
    (S.D.N.Y. 2005) ..................................................................................................................... 14

In re Royal Group Techs. Secs. Litig., No. 04 Civ. 9809 HB 2005 ............................................ 14

International Shoe v. Washington, 325 U.S. 310 (1945) .............................................................. 1

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) .......................................... 2, 13

Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille, 937
    F.2d 44 (2d Cir.1991) .............................................................................................................. 3

Launer v. Buena Vista Winery, Inc., 916 F. Supp. 204 (E.D.N.Y. 1996) ................................. 8, 9

Martin E. Segal Co. v. Barton, 612 F. Supp. 935 (D.C.N.Y. 1985) ................................ 9, 10, 11,
                                                                                                                                13

McGee v. International Life Ins., 355 U.S. 220 (1957) ................................................................ 8

McGowan v. Smith, 52 N.Y. 2d 268 (1981) .................................................................................. 9

Metro. Life. Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) ................................ 1

Pavlo v. James, 437 F. Supp. 125 (S.D.N.Y. 1977) .................................................................... 10

Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64 (2d Cir. 2003) .............................. 14

Starlift Logistics v. Stacey, 2006 WL 2689618 (E.D.N.Y. 2006) ................................................. 8

Stutts v. De Dietrich Group, 465 F.Supp.2d 156 (E.D.N.Y. 2006) .............................................. 3

Time Share, 735 F.2d (quoting Kulko v. Superior Court of California, 436 U.S. 84 (1978)) .................................................................................................................. 7

Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Co., 75 F.3d 147 (3d Cir. 1995) ....................................................................................................... 7

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980) ............................................. 2

**RULES**

Federal Rule of Civil Procedure 12(b)(2) ...................................................................................... 1

Federal Rule of Civil Procedure 12(b)(5) ...................................................................................... 1

N.Y. CPLR § 302(a)(1) .................................................................................................................. 8

**MISCELLANEOUS**

Twitchell, The Myth of General Jurisdiction, 101 Harv. L. Rev. 610, 651 (1988) ........................ 6

I.  **ARGUMENT**

   A.  **THE COURT SHOULD DISMISS THE COMPLAINT AS TO INDIVIDUAL DEFENDANTS MARTIN MCNARNEY AND DOUGLAS WANG FOR LACK OF PERSONAL JURISDICTION**

Defendants Martin McNarney ("McNarney") and Douglas Wang ("Wang") (jointly, the "Individual Defendants") move to dismiss Plaintiff's Complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2) and to quash for insufficiency of service of process due to lack of personal jurisdiction over either McNarney or Wang under Federal Rule of Civil Procedure 12(b)(5).  For reasons set forth more fully below, Plaintiffs PowerDsine, Inc. ("PowerDsine") and PowerDsine-Israel ("PowerDsine-Israel") cannot carry their burden of proving that either McNarney, a California resident, or Wang, a Taiwan resident, is subject to personal jurisdiction in New York.

On a motion to dismiss pursuant to Rule 12(b)(2), a plaintiff bears the burden of establishing jurisdiction over the defendant.  See Metro. Life. Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  In International Shoe v. Washington, 325 U.S. 310 (1945), the United States Supreme Court held that a court may not exercise jurisdiction over an out-of-state defendant unless that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not 'offend traditional notions of fair play and substantial justice.'"  Id. at 316 (citations omitted).  The Supreme Court subsequently clarified that such "minimum contacts" require a showing by plaintiff that the defendant has "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  Hanson v. Denckla, 357 U.S. 235, 253 (1958).   Purposeful availment requires more than "random, fortuitous or attenuated contacts" with the forum state.  Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985).  Further, the Due Process Clause "protects

1

an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations." Burger King v. Rudzewicz, 471 U.S. 462, 471-2 (1985). Thus, to establish personal jurisdiction over a foreign defendant, the plaintiff must show that the defendant's contacts with the forum are such that he "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

There are two branches to the "minimum contacts" analysis. First, where the contacts with the forum are "continuous and systematic," a court can exercise general jurisdiction over the defendant in any lawsuit, even when the contacts are entirely unrelated to the subject matter of the lawsuit. See Helicopteros Nacionales De Columbia, S.A. v. Hall, 466 U.S. 408, 414-15, n. 9 (1984). Second, some lesser level of contacts will enable a court to exercise specific jurisdiction over the defendant in a lawsuit arising out of these contacts. See id. at 414-15, n. 8. Both requirements "originated in the idea that a court cannot subject a person to its authority where the maintenance of the suit would offend 'traditional notions of fair play and substantial justice." Id. at 568 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

In this case, Plaintiffs PowerDsine, Inc. and PowerDsine-Israel cannot make either showing because the Individual Defendants' contacts with New York are so minimal and because it would be unreasonable to exercise jurisdiction where doing so would impose significant burdens on McNarney and Wang and where California has far stronger connections to these matters. Plaintiffs simply cannot establish either general or specific jurisdiction because the Individual Defendants' contacts with New York, which have absolutely no nexus with the facts underlying Plaintiff's allegations this case, are far below the standard for minimum contacts required for jurisdiction.

### 1. Because The Individual Defendants Have Not Maintained "Continuous and Systematic" Contacts With The Forum State, Thus This Court Cannot Exercise General Personal Jurisdiction Over Them

An assertion of general jurisdiction is consistent with due process only when the plaintiff has satisfied the "rigorous" burden of establishing that the non-resident defendant maintains "continuous and systematic" contacts with the forum. Helicopteros, 466 U.S. at 414-416. General jurisdiction requires a plaintiff to show significantly more than mere minimum contacts with the forum state. Under New York law, CPLR 301 governs general jurisdiction of nonresident defendants. Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille, 937 F.2d 44, 50-51 (2d Cir.1991). A defendant is doing business under Section 301, thus subject to general jurisdiction, when the party, "it is engaged in such a continuous and systematic course of activity that it can be deemed to be 'present' in the state of New York." Id. at 50-51; see also Stutts v. De Dietrich Group, 465 F.Supp.2d 156, 161 (E.D.N.Y. 2006).

Plaintiffs cannot establish general jurisdiction over the Individual Defendants, as neither Wang nor McNarney have engaged in any "continuous and systematic course of activity" with New York. Notably, Plaintiff's Complaint is absolutely devoid of any facts connecting either Wang or McNarney to this jurisdiction. This is understandable, because neither Wang nor McNarney have ever lived or worked in New York. (Wang Decl., ¶ 3, McNarney Decl., ¶ 4 ). They do not own or rent, and have not ever owned or rented, any real estate or property in New York, do not now have, nor have they ever had, a bank account in New York, and do not carry on and have never carried on any business enterprise in New York. Id. Further, the Individual Defendants do not maintain and have never maintained any office, home or telephone in New York. Id. Accordingly, and as set forth more fully below, the State of New York clearly lacks

3

any basis for personal jurisdiction over either individual defendant, thus both McNarney and Wang should be dismissed from this action.

### a. Plaintiffs Cannot Establish General Jurisdiction Over McNarney Based On Random And Sporadic Contacts With New York Over A Two-Year Period

Before going to work for PowerDsine, Inc. on or about November 2004, McNarney had virtually no contacts whatsoever with New York. Similarly, even after going to work for PowerDsine, which is headquartered in New York, McNarney had only rare and inconsequential contacts with this state. Indeed, during his brief two-year tenure with PowerDsine, all of McNarney's business-related activities were focused <u>outside</u> of New York, in California. (McNarney Decl., ¶ 7). McNarney lived in California during his entire tenure with PowerDsine, and for approximately seven (7) years prior to his employment with PowerDsine. (McNarney Decl., ¶ 3). A PowerDsine employee traveled to California from New York to interview McNarney in-person, rather than requiring McNarney to travel to New York. <u>Id</u>. at ¶ 6. He interviewed for his position at PowerDsine in California and was extended an offer of employment through a phone call from Israel, not New York. (McNarney Decl., ¶ 6). McNarney signed the Non-Disclosure and Non-Competition Agreement, which is at issue in this lawsuit, in California. (McNarney Decl., ¶ 12). During his employment with PowerDsine, McNarney had absolutely no responsibility for servicing accounts or conducting business on behalf of Plaintiffs PowerDsine or PowerDsine Ltd. in New York. (McNarney Decl., ¶ 7). Rather, McNarney solicited business and serviced customers exclusively in the Western region of the United States and therefore traveled only to these states for such purposes, with his primary focus on California clientele. (McNarney Decl., ¶ 7).

In fact, during his entire tenure with PowerDsine, McNarney's <u>sole</u> contact with New York was his attendance at PowerDsine events on a <u>total of four occasions</u>. (McNarney Decl., ¶

4

8 ). McNarney traveled to New York on these four occasions, at the request of the PowerDsine, for approximately two to three days on each occasion. Three of the four PowerDsine meetings in New York were Company-wide meetings that employees from all over the country were required to attend, they were not meetings specifically geared toward McNarney. More importantly, McNarney attended all of these meetings at the direction of his managers at PowerDsine. (McNarney Decl., ¶¶ 8, 9, 10).

During each of those business trips, McNarney met with Company employees, including PowerDsine employees from Israel, for internal Company business reviews and meetings. Id. McNarney did not meet with Company customers during his trips to New York, other than on two limited occasions. First, on or about March 21, 2006, McNarney attended a New York business trip at the specific request of his employer, PowerDsine. Similarly, PowerDsine specifically required that McNarney and the rest of the Company employees attend [two] days of training in New York. During March 2006, McNarney visited one customer on one occasion for approximately two (2) hours. Second, on or about September 11, 2006, McNarney traveled to New York at PowerDsine's specific request, including the request of the PowerDsine Director of Human Resources. During the September 2006 trip, McNarney attended a conference held by a customer for all of that customers' vendors, which approximately two hundred (200) vendors attended. At no time while McNarney was in New York did he disclose any Company trade secret, confidential, or proprietary information to any customers in New York.

Further, McNarney has not had any contacts with New York since leaving PowerDsine. In his current position at Broadcom Corporation, a corporation headquartered in Irvine, California, McNarney is not responsible for any New York-related work whatsoever. (McNarney

Decl., ¶¶ 23, 26, 28).  McNarney does not need to travel to New York, nor does he have any reason to communicate with any person or entity in New York. (McNarney Decl., ¶ 26).

The decision in Helicopteros, supra, provides additional insight on these facts.  There, the Supreme Court held that the State of Texas did not have sufficient affiliation with a Colombian corporation to justify general jurisdiction over it there in a dispute involving a helicopter crash in Peru.  It reached this conclusion despite the fact that the defendant sent a corporate officer to Texas to negotiate a contract; purchased over four million dollars worth of helicopters and equipment in Texas over an eight-year period; sent employees to Texas for training; and accepted checks drawn on a Texas bank account.  466 U.S. at 410-411; see also Twitchell, The Myth of General Jurisdiction, 101 Harv. L. Rev. 610, 651 (1988) (assertion of general jurisdiction only justifiable for "true insiders" or those with their "home base" in the forum).

Clearly, McNarney's sporadic contacts with New York over a two-year period were not of the magnitude necessary to confer this State's general jurisdiction over him.  His attendance at four meetings in New York – all of which PowerDsine directed him to attend – certainly do not constitute the sort of "continuous and systematic" contacts with the forum as are constitutionally required to permit this Court to exercise personal jurisdiction over McNarney.  Here, PowerDsine cannot carry its burden of proving that McNarney had extensive contacts with New York.  As such, this Court cannot exercise general in personam jurisdiction over McNarney.

              **b.**       **Plaintiffs Cannot Establish General Jurisdiction Over Wang Based On One Contact With New York Over A Two-Year Period**

Wang traveled to New York only one time, approximately two years ago, in October 2005, at PowerDsine–Israel's request.  Wang's one contact with the state of New York in October 2005 cannot be reasonably described as either "continuous" or "systematic" – much less both.  See Perkins, 342 U.S. at 448 (general jurisdiction requires contacts that are continuous and

6

systematic") (emphasis added).  Thus, Plaintiff clearly cannot establish general jurisdiction over Wang.

### 2. No Nexus Exists Between Plaintiffs' Causes of Action And The Individual Defendants' In-State Conduct, Thus This Court Cannot Exercise Specific Personal Jurisdiction Over Them

In order to exercise specific jurisdiction over a non-resident defendant, the Court must be satisfied that: (1) the "particular cause of action at issue arose out of the defendant's contacts with the forum" and (2) the defendant purposefully established "minimum contacts" in the forum state.  Alexander v. CIGNA, 991 F. Supp. at 443; Mellon Bank, 960 F.2d at 1221; Burger King, 471 U.S. at 474.  The "minimum contacts" must have a basis in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." Burger King, 471 U.S. at 475; Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Co., 75 F.3d 147, 150 (3d Cir. 1995).  In making this determination, the court must consider whether "the quality and nature of the defendant's activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state."  Time Share, 735 F.2d at 63 (quoting Kulko v. Superior Court of California, 436 U.S. 84 (1978)) (emphasis in original).

The "purposeful availment" requirement is not satisfied if the defendant's contacts with the forum are random, fortuitous or attenuated, or if the defendant's contacts result from the unilateral activity of the plaintiff.  Burger King, 471 U.S. at 475; see also Hanson, 357 U.S. at 253.  Rather, "[j]urisdiction is proper...where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King, 471 U.S. at 475 (quoting McGee v. International Life Ins., 355 U.S. 220 (1957)) (emphasis in original).

7

Personal jurisdiction over a non-domiciliary individual defendant is provided under New York's long-arm statute, CPLR § 302(a)(1). See Central Locating Service, Ltd. v. Southern Bell Telephone & Telegraph, 1990 WL 178995 (N.D.N.Y. 1990). The applicable portion of New York's long- arm statute provides that a court may exercise personal jurisdiction over a non-domiciliary who "transacts any business within the state." N.Y. CPLR § 302(a)(1). It is well-established that to obtain jurisdiction under Section 302(a)(1), the following conditions must be satisfied: (1) the defendant must transact business in the state and (2) the cause of action must be directly related to, and arise from the business so transacted." See Starlift Logistics v. Stacey, 2006 WL 2689618 (E.D.N.Y. 2006).

The New York long-arm statute thus requires "a strong nexus between the plaintiff's cause of action and the defendant's in-state conduct." See Launer v. Buena Vista Winery, Inc., 916 F. Supp. 204, 208 (E.D.N.Y. 1996); Creative Socio-Medics, Corp. v. City of Richmond, 219 F.Supp. 2d 300, (2002) (noting that the "arises from" prong of Section 302(a)(1) is satisfied "if there is a strong nexus between the plaintiff's cause of action and the defendant's in-state conduct"); Starlift Logistics, Inc. v. Stacey, 2006 WL 2689618 (E.D.N.Y. 2006) (noting that "arising from" prong requires a showing of a "strong nexus" between plaintiff's claim and defendant's in-state conduct) (citations omitted); Besicorp Group, Inc. v. Crown Life Insurance Co., 1989 WL 53019 (N.D.N.Y. 1989) (finding that an "articulable nexus" between business transacted and cause of action must exist); see also McGowan v. Smith, 52 N.Y. 2d 268, 272 (1981) (transaction of business by a foreign defendant must be "sufficiently related to the subject matter of the lawsuit to justify the presence of in personam jurisdiction" under Section 302(a)(1)). Additionally, the defendant's in-state conduct must be "purposeful." See Launer v. Buena Vista Winery, Inc., 916 F. Supp. at 208. Whether a party has engaged in sufficient

8

"purposeful" activity to confer jurisdiction in New York requires an examination of the "totality of the circumstances." Id. at 208-9.

Plaintiffs, just like the plaintiff in Martin E. Segal Co. v. Barton, 612 F. Supp. 935 (D.C.N.Y. 1985), bring an action against McNarney and Wang solely for alleged breach of a noncompetition agreement. In the Segal case, Segal hired John Barton as a corporate division representative for the Western region, working out of Segal's San Francisco office. Id. at 936. Barton worked for Segal "stationed in the San Francisco office" and, like McNarney, Segal "worked with clients based exclusively in California, Washington, or other Western States." Id. Barton also signed a noncompetition agreement while he was in California and, following his separation from employment, Segal sued him for breach of his noncompetition agreement. Id. Segal, like McNarney and Wang, moved to dismiss the action pursuant to Federal Rule 12(b)(2) for lack of personal jurisdiction. The Court swiftly dismissed Segal's case for lack of of personal jurisdiction under CPLR Section 302(a)(1), holding that:

> Segal has not established, or even alleged, that the visits to New York or the business conducted during those visits is related in a substantial or proximate manner to the alleged violations of the non-competition agreement. Although Segal claims that Barton 'performed in New York numerous purposeful acts in relation to his employment, Segal does not allege that these acts were substantially or proximately connected to the alleged breach.

Id. at 937.

Finding that Segal "alleged only a connection between business transacted in New York and the employment contract generally" and that Segal failed to allege any "nexus between the business transacted in New York and the specific breaches alleged in the complaint," the Court found that Segal failed to allege proper jurisdiction under CPLR Section 302(a)(1) and dismissed the case. Id.

In Pavlo, another case based on similar facts, a former employer alleged that a former employee was engaging in unfair competition in Kentucky and brought suit in New York State

9

as a result. See Pavlo v. James, 437 F. Supp. 125 (S.D.N.Y. 1977). The Court similarly dismissed the former employer's claims on the basis of lack of personal jurisdiction under Section 302(a)(1) because, "Plaintiff makes no assertions of specific transactions occurring in New York in which defendant participated, or how such transactions, if they existed, would relate to his instant claim for damages. Such a showing of acts occurring in New York and giving rise to the claim *is necessary* under Section 302(a)(1)." Id. at 126.

As set forth more fully below, applying the factors set forth in Segal and Pavlo, Plaintiffs have entirely failed to establish any semblance of personal jurisdiction over McNarney or Wang. To begin, Plaintiffs' Complaint does not provide a single allegation in support of any link, "transacting business" or otherwise, between New York and either Wang or McNarney. For that reason alone, Plaintiff's Complaint should be dismissed. Additionally, Plaintiff makes no allegation that a single act occurred in New York relating to either McNarney or Wang's alleged Confidentiality and Non-Competition Agreements. The lack of such allegations is not surprising, because, in fact, the opposite is true – not one single act occurred in New York relating to McNarney and Wang's Confidentiality and Non-Competition Agreements, nor could it, as neither individual was anywhere near the state of New York during the time that they allegedly "breached" their agreements by joining Broadcom. Because, based on the allegations as drafted, it is crystal clear that Plaintiffs cannot establish any nexus, and cannot cure the Complaint to do so, the Complaint as against McNarney and Wang must be dismissed.

      **a.    McNarney's Contacts With New York Are Insufficient To Establish Specific Jurisdiction Because No Nexus Exists Between McNarney's In-State Conduct and Plaintiff's Allegations**

Plaintiffs PowerDsine-Israel. and PowerDsine, Inc. cannot establish that specific jurisdiction exists over McNarney because the causes of action at issue in this lawsuit had

nothing to do with McNarney's contacts with New York, which last occurred during the week of September 11, 2006. (McNarney, ¶ 10). The causes of action asserted by PowerDsine against McNarney all relate to and arise out of his activities after he left the employ of PowerDsine, "in or about April, 2007." Compl. ¶ 19. The basis for Plaintiffs action is McNarney's act of "becoming an employee of Broadcom." Compl. ¶ 43. It is not disputed that McNarney joined Broadcom "after leaving PowerDsine, Inc.," and that his departure from PowerDsine took place "in or about April, 2007," approximately seven (7) months after McNarney's last contact with New York. See Compl. ¶ 19, 20. Thus, Plaintiffs cannot possibly establish any "nexus" between New York and any alleged bad acts on the part of McNarney, as his alleged bad act of joining Broadcom occurred months after he had departed from any possible jurisdiction in New York.

Moreover, all of McNarney's activities that allegedly violate his Agreement with PowerDsine took place in California. That is where he was hired by Plaintiffs' alleged competitor, Broadcom. That is where he is currently working for Broadcom. Indeed, that is where he signed the Confidentiality and Non-Competition Agreement with PowerDsine, which Plaintiffs claim he breached. Even if PowerDsine could sustain its claims against McNarney, it cannot be disputed that these causes of action are in no way connected to McNarney's four trips to New York, which last occurred in September 2006. See Martin E. Segal Co. v. Barton, 612 F. Supp. 935 (D.C.N.Y. 1985). Put simply, none of PowerDsine's claims against McNarney have anything to do with his contacts with New York. As such, there is no basis upon which this Court can exercise specific jurisdiction over McNarney.

          **b.    Wang's Contacts With New York Are Insufficient To Establish Specific Jurisdiction Because No Nexus Exists Between Wang's In-State Conduct and Plaintiff's Allegations**

Plaintiffs' attempts to subject Wang to jurisdiction are subject to the same fatal flaws described in McNarney's case above. It is simply impossible for Plaintiffs to demonstrate any

11

nexus, much less a "strong" nexus, between Wang's brief visit to New York in October 2005, several years ago, and Plaintiffs' allegations against Wang today, including that he breached his any Confidentiality and Non-Competition Agreement, or any agreement, "by becoming an employee of Broadcom." Compl. ¶ 47. As Plaintiffs admit, at least with respect to timing, Microsemi/PowerDsine did not even terminate Wang's employment until February 2007, almost two years after his brief visit to New York. See Compl. ¶ 36. Again, based on Plaintiffs' Complaint alone, Wang allegedly joined Broadcom "in or about June 2007." Compl. ¶ 37. Taking Plaintiffs' allegation as true, it is impossible for Plaintiffs to demonstrate any nexus between an alleged "breach" that virtually occurred today and a visit to New York two (2) years ago. Notably, Plaintiff does not attempt to allege any such nexus. For these reasons along, Wang should be swiftly dismissed from this action for failure to establish personal jurisdiction.

Additionally, Wang's conduct was not such that he could ever have reasonably anticipated being sued in a New York court. In fact, he has only set foot in New York on one occasion in his life. Wang was employed in Taiwan by an employer, PowerDsine-Israel, based in Israel. All interviews for his contracting relationship, and then his employment, with PowerDsine-Israel occurred while he was in Taiwan. He communicated with PowerDsine-Israel employees in Israel during the interviewing process. (Wang, ¶ 8). Wang never traveled to New York or to the United States for any interviews for any position that he held with PowerDsine-Israel, and PowerDsine-Israel never asked him to travel to New York for that purpose, or for any purpose, other than on one occasion. Id. Throughout his employment with PowerDsine-Israel , Wang worked with customers only located in Taiwan and China. Wang never worked with any PowerDsine–Israel customers based in New York, if such customers exist. The expectations and responsibilities that PowerDsine-Israel communicated to Wang did not include calling on customers in New York, and Wang did not call on customers in New York. Furthermore, Wang has not traveled to New York or had any contacts with New York during the course of my employment with Broadcom. Nor did Wang invoke the "benefits and protections" of New York law, or even of United States law. Wang certainly did not anticipate or expect that either

12

PowerDsine, Inc. or PowerDsine-Israel would attempt to sue him in court in New York, or anywhere else in the United States.

### 3. Wang Should Be Dismissed Because No Conceivable Basis Exists For Wang To Be Subject To Jurisdiction In The United States And, Thus, It Would Be Unreasonable, Unfair And Contrary To Law To Subject Wang to Jurisdiction In New York

Even if Plaintiff could establish that Wang had sufficient contacts with New York, which it cannot, the exercise of jurisdiction must "comport[] with 'traditional notices of fair play and substantial justice' – that is, whether it is reasonable under the circumstances of the particular case." Metro. Life, 84 F.2d at 568 (quoting Int'l Show, 326 U.S. at 316). To evaluate the reasonableness of an assertion of jurisdiction, a court must consider "the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987). In cases involving foreign defendants, the court must also consider the "procedural and substantives policies of other *nations* whose interests are affected by the assertion of jurisdiction." Id. at 115 (emphasis in original). In this case, the extreme burden that Wang would face if forced to defend this lawsuit, and the overriding interest of Taiwan in regulating the behavior of its own citizens and corporations, outweighs Plaintiff's interest in obtaining relief.

Wang would face a heavy burden if forced to defend this lawsuit in the United States, which he has only visited on two occasions during his entire lifetime (once in New York, once in California). First, he is a lifelong citizen and resident of Taiwan, with no real connection whatsoever to the United States. Most of the cases addressing personal jurisdiction are diversity cases in which an American citizen in one state is sued in another state; the calculation is quite different when the defendant is a citizen of a separate foreign nation. As the Supreme Court noted in Asahi: "[t]he unique burdens placed upon one who must defend itself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Id. at 114.

13

Second, the *only* employment relationship here is between Wang and PowerDsine, Ltd, in *Israel*. PowerDsine, Inc., based in New York, is not Wang's employer and has no contractual or other connection to Wang. It is indisputable that the foundation of Plaintiff PowerDsine, Ltd's breach of contract claim against Wang is based only in Wang's employment in Taiwan with an Israeli employer. The contract was discussed with an Israeli employer, executed in Taiwan, performed in Taiwan and breached, if at all, in Taiwan. Thus, no witnesses are located in the United States. It could well be impossible for Wang to obtain witness testimony at trial in the United States from unwilling witnesses in Israel and Taiwan given this Court's lack of subpoena power over those witnesses. See In re Royal Group Techs. Secs. Litig., No. 04 Civ. 9809 HB 2005 WL 3105341, at *2, *8-9 (S.D.N.Y. Nov. 21, 2005) (granting a motion to dismiss under the *forum non conveniens* doctrine because, among other things, several key Canadian witnesses were "located outside this Court's subpoena power").

Finally, because PowerDsine-Israel is "a corporation organized under the laws of Israel, with its principal place of business" in Israel, it is also a foreign plaintiff whose selection of New York as a forum "is entitled to less deference because one may not easily presume that choice is convenient." See Compl., ¶ 2; Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 71 (2d Cir. 2003); In fact, the Second Circuit has noted that "In such circumstances, it is more likely that forum-shopping for a higher damage award or for some other litigation advantage was the motivation for plaintiff's selection." Id.; see also In re Royal Group Technologies Securities Litigation  2005 WL 3105341, *2 (S.D.N.Y. 2005) (noting that a named plaintiffs' "lack of bona fide connections to this district" indicates that their "choice of forum should be accorded less deference" than due to a resident of the forum). Based on the foregoing, Wang's one contact with New York, almost two years ago, is so transitory and attenuated as to be non-existent, and it would be unreasonable and unjust to force him to defend this lawsuit in New York or anywhere in the United States.

## II. CONCLUSION

For the foregoing reasons, Defendants Martin McNarney and Douglas Wang respectfully submit that this Court should enter an Order dismissing the Complaint for lack of personal jurisdiction over them or, in the alternative, should quash service of process of the Complaint due to lack of personal jurisdiction.

Dated: July 18, 2007

Respectfully submitted,

/s/ Michelle Shapiro
Michelle J. Shapiro (MS-8434)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel: (212) 999-5800
Fax: (212) 999-5899

Attorneys for Defendants
Broadcom Corporation
Martin McNarney
Douglas Wang