UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

POWERDSINE, INC. and POWERDSINE, LTD.,

                                    Plaintiffs,

              -against-

BROADCOM CORPORATION, MARTIN
MCNARNEY and DOUGLAS WANG,

                               Defendants.

Civil Action No. 07cv2490(SJF)(WDW)

ECF Case

**MEMORANDUM OF LAW IN
OPPOSITION TO INDIVIDUAL
DEFENDANTS MARTIN
MCNARNEY AND DOUGLAS
WANG'S MOTION TO DISMISS FOR
LACK OF PERSONAL
JURISDICTION AND TO QUASH
FOR INSUFFICIENCY OF SERVICE
OF PROCESS**

**TABLE OF CONTENTS**

Section                                           Page

Table of Contents...............................................................................................i

Table of Authorities...........................................................................................ii

PRELIMINARY STATEMENT .......................................................................1

    I.    The Parties ..............................................................................................2

            A.    PowerDsine...............................................................................2

            B.    Martin McNarney ....................................................................3

            C.    Douglas Wang ..........................................................................5

            D.    Broadcom..................................................................................7

ARGUMENT.......................................................................................................8

    II.    The Individual Defendants Consented to Personal
          Jurisdiction in this Judicial District ......................................................8

            A.    Mr. McNarney Consented to Personal Jurisdiction
                  By Signing An Agreement With An Enforceable
                  Forum-Selection Clause ........................................................10

            B.    Mr. Wang Consented to Personal Jurisdiction
                    By Signing An Agreement With An Enforceable
                    Forum-Selection Clause ........................................................14

             C.    The Forum-selection Clauses Are Enforceable Under
                  The Phillips Analysis.............................................................12

            D.    Enforcement Of The Individual Defendants' Agreements
                  Will Not Be Unreasonable.....................................................14

    III.  This Court has Personal Jurisdiction Over the Individual
         Defendants Under New York State Law .................................................16

    IV.  Service of Process was Procedurally Sufficient as to the Defendants........22

CONCLUSION .................................................................................................25

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                   <u>Page</u>

*Agency Rent A Car Sys. v. Grand Rent A Car Corp.,*
    98 F.3d 25 (2d Cir. 1996) ................................................................................. 18

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999) ....................................................................... 16, 17

*Bear, Stearns & Co., Inc. v. Bennett,*
    938 F.2d 31 (2d Cir. 1991) ................................................................................. 9

*Chong v. Healthtronics, Inc.,*
    No. 06 Civ. 1287, 2007 WL 1836831 (E.D.N.Y. Jun. 20, 2007) ...................... 17

*Citigroup Inc. v. City Holding Co.,*
    97 F. Supp. 2d 549 (S.D.N.Y. 2000) ............................................................... 20

*Copenhagen Reinsurance Co. (UK) Ltd. v. Sargeant Marine, Inc.,*
    No. 98 Civ. 1476, 1998 WL 323489 (S.D.N.Y. Jun. 17, 1998) ....................... 13

*Corinthian Media v. Yelsey,*
    No. 92 Civ. 0109, 1992 WL 47546 (S.D.N.Y. Mar. 5, 1992) ............... 14, 15, 16

*CutCo Industries, Inc. v. Naughton,*
    806 F.2d 361 (2d Cir. 1986) ............................................................................... 8

*Design Strategy Corp. v. Nghiem,*
    14 F. Supp. 2d 298 (S.D.N.Y. 1998) ............................................................. 9, 16
*D.H. Blair & Co. Inc. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006) .................................................................. 8, 9, 10, 17

*DiStefano v. Carozzi N. Am., Inc.,*
    286 F.3d 81 (2d Cir. 2001) ................................................................................. 8

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,*
    456 U.S. 694 (1982) ........................................................................................... 9

*Jones v. Weibrecht,*
    901 F.2d 17 (2d Cir. 1990) ................................................................................. 9

*Matera v. Native Eyewear, Inc.,*
    355 F. Supp. 2d 680 (E.D.N.Y. 2005) ............................................................. 18

*Olympus America, Inc. v. Fujinon, Inc.,*
    779 N.Y.S.2d 184 (1st Dept. 2004) ............................................................. 19, 20

## TABLE OF AUTHORITIES

Cases                                                                                          Page

*Opticare Acquisition Corp. v. Castillo,*
    806 N.Y.S.2d 84 (2d Dept. 2005) ........................................................................ 19

*Packer v. TDI Sys., Inc.,*
    959 F. Supp. 192 (S.D.N.Y. 1997) ........................................................................ 9

*Phillips v. Audio Interactive Limited,*
    No. 05-7017, 2007 WL 2090202 (2d Cir. Jul. 24, 2007) ........................... 9, 10, 13

*Ramada Franchise Systems, Inc. v. Cusack Development*, Inc.,
    No. 96 Civ. 8085, 1997 WL 304885 (S.D.N.Y. Jun. 6, 1997) ........................ 9, 13

*Reed & Martin, Inc. v. Westinghouse Elec. Corp.,*
    439 F.2d 1268 (2d Cir. 1971) .............................................................................. 13

*Reiner & Co. v. Schwartz,*
    394 N.Y.S. 2d 844 (1977) .................................................................................... 19

*Robinson v. Overseas Military Sales Corp.,*
    21 F.3d 502 (2d Cir. 1994) .................................................................................... 8

*Roby v. Corporation of Lloyd's,*
    996 F.2d 1353 (2d Cir. 1993) ............................................................................... 14

*SmartPros Ltd. v. Straub,*
    808 N.Y.S.2d 369 (2d Dept. 2005) ...................................................................... 19

*Starlift Logistics, Inc. v. Stacey,*
    No. 05-4162, 2006 WL 2689618 (E.D.N.Y. Sept. 19,.2006) ......................... 20, 21

*United States v. Montreal Trust Co.,*
    358 F.2d 239, 242 (2d Cir. 1966) ........................................................................ 22

*Strategic Mktg. and Communs. v. Kmart Corp.,*
    41 F. Supp. 2d 268 (S.D.N.Y. 1998) ................................................................... 16

*Whitaker v. Am. Telecasting, Inc.,*
    261 F.3d 196 (2d Cir. 2001) .................................................................................. 8

**TABLE OF AUTHORITIES**

Cases                                                            Page

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(2) ................................................................................16

Fed. R. Civ. P. 12(b)(5) ................................................................................22

Fed. R. Civ. P. 4(k)(1)(A)..............................................................................22

Fed. R. Civ. P. 4(e) .......................................................................................23

**STATE STATUTES**

N.Y. C.P.L.R. §302(a)(1) .................................................................17, 19, 20, 22, 24

iv

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

POWERDSINE, INC. and POWERDSINE, LTD.,

                              Plaintiffs,

-against-

BROADCOM CORPORATION, MARTIN
MCNARNEY and DOUGLAS WANG,

                            Defendants.

Civil Action No. 07cv2490(SJF)(WDW)

ECF Case

**MEMORANDUM OF LAW IN OPPOSITION TO INDIVIDUAL DEFENDANTS MARTIN MCNARNEY AND DOUGLAS WANG'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TO QUASH FOR INSUFFICIENCY OF SERVICE OF PROCESS**

        Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd. (collectively "Plaintiffs" or "PowerDsine") submit this Memorandum of Law in opposition to Defendants Martin McNarney ("Mr. McNarney") and Douglas Wang's ("Mr. Wang") (collectively, the "Individual Defendants") motion to dismiss for lack of personal jurisdiction over Defendants Mr. McNarney and Mr. Wang and their motion to quash for insufficiency of service of process based on purported lack of personal jurisdiction.

## PRELIMINARY STATEMENT

        This case arises out of the intentional and continued breach of the confidentiality and non-competition agreements among Plaintiffs PowerDsine, Inc. and PowerDsine, Ltd. and their former employees Defendants Mr. McNarney and Mr. Wang, respectively, and the inducement thereof by Defendant Broadcom Corporation ("Broadcom"). The agreements at issue contain provisions whereby, among other things, the Individual Defendants agreed not to disclose confidential information and not to work for competitors of the Plaintiffs in the field of Power-over-Ethernet ("PoE") technology for a specified period of time. Recently, Defendant

Broadcom, a competitor of PowerDsine in the PoE field, with knowledge of the Individual

Defendants' confidentiality and non-compete agreements, hired the Individual Defendants and

continues to employ them, thereby inducing the Individual Defendants to breach their

agreements.  As a result, Plaintiffs will continue to suffer damages and will suffer irreparable

injury if not enjoined by this Court.

I.      **THE PARTIES**

PowerDsine, Inc. is a New York Corporation and its corporate parent, PowerDsine,

Ltd.,[1] is an Israeli corporation.  The Defendants include individuals Mr. McNarney and Mr.

Wang, and Broadcom.  Broadcom does not join the Individual Defendants in their motions to

dismiss for lack of personal jurisdiction or in their motion to quash for insufficiency of service of

process.  Accordingly, Broadcom is deemed to have waived any objection to personal

jurisdiction or service of process.

A.      **POWERDSINE**

PowerDsine, Inc., a wholly owned U.S. subsidiary of PowerDsine, Ltd., is a

corporation organized under the laws of the State of New York with its principal place of

business in Melville, New York.  PowerDsine, Inc. assists its parent, PowerDsine, Ltd., in the

design of integrated circuits, modules and systems that enable the implementation of PoE

technology in local area networks ("LANs") and sells and supplies such integrated circuits,

modules and systems.  PowerDsine, Ltd. designs and supplies integrated circuits, modules and

systems that enable the implementation of PoE in LANs and sells some of its products in the

U.S. and other countries through its U.S. subsidiary, PowerDsine, Inc.

---

[1]      PowerDsine, Ltd. was recently purchased by Microsemi Corporation.  However, the two companies are separate corporate entities.

For almost 10 years, PowerDsine has conducted extensive and innovative research and development related to PoE networks.  In order to maintain its competitive edge, PowerDsine maintains much of its proprietary information confidentially.  Due to its innovative, confidential proprietary information, PowerDsine has become the technological leader in the PoE market.  Plaintiffs' customers regularly incorporate PowerDsine's components into Ethernet network products sold on the open market.  These components enable the systems in which these products are incorporated to supply both data and electrical operating power over the same Ethernet cable.

## B.   MARTIN MCNARNEY

Defendant Martin McNarney is a former employee of PowerDsine, Inc. who, upon information and belief, resides at 535 East Central Avenue, Morgan Hill, CA 95037.  On or about November 16, 2004, Mr. McNarney was retained by PowerDsine, Inc. as an employee in the position of West Coast Sales Manager; a position which includes exposure to confidential and proprietary information concerning PowerDsine Company Information (as defined below).  Prior to his retention by PowerDsine, Inc., Mr. McNarney was not a sales person and had limited experience in sales.  Solely for the purpose of conducting his work and to induce the disclosure of confidential and proprietary information by PowerDsine, Inc., as well as for compensation and other valuable consideration, Mr. McNarney agreed to make certain undertakings and obligations of confidentiality, nondisclosure and non-competition.

In connection with his employment with PowerDsine, Inc., Mr. McNarney executed a Confidentiality and Non-Competition Agreement on December 18, 2004 ("McNarney Agreement").  Complaint, Exh. A.  Under the McNarney Agreement, Mr. McNarney agreed to certain non-disclosure, non-competition and non-solicitation obligations.  Specifically, under

3

Paragraph 2 of the Agreement, Mr. McNarney, as the proposed Recipient of Company

Information, agreed:

> to hold in confidence all Company Information disclosed to him/her or to which
> he/she has or had access and not to exploit, disclose or use the Company
> Information directly or indirectly for any purpose other than the purpose of
> providing his/her services to the Company. The Recipient agrees to disclose the
> Company Information only to persons necessary in connection with the purposes
> stated above and who have taken the same undertakings as he/she did. The
> Recipient agrees to take measures towards every person he/she contacts regarding
> his work, to enforce the foregoing covenant of secrecy.

Complaint, Exh. A, para. 2. Paragraph 1 of the Agreement defines Company Information as

follows:

> all confidential and proprietary information belonging to or in the possession of
> the Company, including but not limited to any and all specifications, formulae,
> prototypes, software and hardware, and any and all records, data, methods,
> techniques, processes, projections, plans, marketing and/or pricing information,
> materials, financial statements, memoranda, analyses, notes and any other data or
> information (in whatever form), as well as improvements and know-how related
> thereto, relating to the Company, the Company's suppliers, clients, research and
> development activities and products.

With respect to the non-competition section of his Agreement, Mr. McNarney further agreed as

follows:

> for a period of one (1) year after he/she ceases to have connections with the
> Company, for any reason whatsoever - whether upon the initiative of the
> Company or the Subsidiary or of the Recipient, he/she will not, directly or
> indirectly, engage whether as an employee, independent, partner, joint venturer,
> shareholder (other than as a shareholder of not more than 5% of the shares of a
> publicly traded company), investor, director, consultant or otherwise, in any
> business or activity in Israel or elsewhere in the world, which is competitive with
> the (i) products of, and/or (ii) services of the Company in the business in which it
> is currently engaged or in which it may be engaged in during the time of
> Recipient's connections with the Company.

Complaint, Exh. A, para. 5. During the course of his employment, pursuant to the Agreement,

Mr. McNarney accepted exposure to PowerDsine confidential and proprietary Company

Information. Also during the course of Mr. McNarney's employment, PowerDsine, Inc. provided

him with compensation in the form of money and other valuable consideration including PowerDsine stock options.  In or about April, 2007, Mr. McNarney began employment with Broadcom (McNarney Aff., paras. 20, 22) in direct contravention of paragraph 5 of the Agreement.

### C.    DOUGLAS WANG

Defendant Douglas Wang is a former employee of PowerDsine, Ltd.  On or about September 19, 2004, Mr. Wang was retained by a contractor of PowerDsine to provide various services to PowerDsine, Ltd. and its employees in connection with the design and manufacture of integrated circuits, modules and systems that enable the implementation of PoE in LANs.  Solely for the purpose of conducting his work and to induce the disclosure of confidential and proprietary information by PowerDsine, Ltd., as well as for compensation and other valuable consideration, Mr. Wang agreed to make certain undertakings and obligations of confidentiality, nondisclosure and non-competition.  In connection with the services that Mr. Wang was to provide for PowerDsine, Ltd., Mr. Wang executed a Confidentiality and Non-Competition Agreement (the "Wang Agreement") (Exh. B to Complaint) on or about September 19, 2004.

As set forth in Paragraph 1 of the Wang Agreement, certain confidential and proprietary information ("Company Information") belonged to or was in the possession of PowerDsine, Ltd.  The Wang Agreement defines Company Information as confidential and proprietary information described as follows:

> any and all confidential and proprietary information belonging to or in the possession of the Company, including, but not limited to any and all specifications, formulae, prototypes, software and hardware, and any and all records, data, methods, techniques, processes, projections, plans, marketing and/or pricing information, materials, financial statements, memoranda, analyses, notes and other data or information (in whatever form), as well as improvements and know-how related thereto, relating to [PowerDsine, Ltd.], [its] suppliers, clients, research and development activities and products.

Complaint, Exh. B, para. 1.  In addition, Mr. Wang agreed to certain non-disclosure, non-competition and non-solicitation obligations.  Specifically, pursuant to Paragraph 2 of the Agreement, Mr. Wang, as the proposed Recipient of Company Information, agreed as follows:

> to hold in confidence all Company Information disclosed to him/her or to which he/she has or had access and not to exploit, disclose or use the Company Information directly or indirectly for any purpose other than the purpose of providing his/her services to the Company.  The Recipient agrees to disclose the Company Information only to persons necessary in connection with the purposes stated above and who have taken the same undertakings as he/she did.  The Recipient agrees to take measures towards every person he/she contacts regarding his work, to enforce the foregoing covenant of secrecy.

Complaint, Exh. B, para. 2.

To induce PowerDsine, Ltd. to disclose its highly sensitive Company Information, Mr. Wang knowingly and willingly agreed to the following term of the Agreement:

> for a period of two (2) years after he/she ceases to have connections with the Company, for any reason whatsoever - whether upon the initiative of the Company or the Subsidiary or of the Recipient, he/she will not, directly or indirectly, engage whether as an employee, independent, partner, joint venturer, shareholder (other than as a shareholder of not more than 5% of the shares of a publicly traded company), investor, director, consultant or otherwise, in any business or activity in Israel or elsewhere in the world, which is competitive with the  (i) products of, and/or  (ii) services of the Company in the business in which it is currently engaged or in which it may be engaged in during the time of Recipient's connections with the Company.

Complaint, Exh. B, para. 5.  After Mr. Wang executed the Agreement, and in connection with his retainer on behalf of PowerDsine, Ltd., Mr. Wang accepted exposure to PowerDsine, Ltd.'s extremely valuable Company Information.

On or about October 11, 2004, PowerDsine, Ltd. offered Mr. Wang direct employment in the position of "Application Engineering Manager - Asia."  *See* "Wang Offer Letter," Complaint, Exh. C.  PowerDsine, Ltd.'s offer of employment required, among other things, that Mr. Wang provide customer-care and pre-sales services ***exclusively*** to PowerDsine,

Ltd.'s customers and potential customers. Complaint, Exh. C, first para. In addition, the terms of the Contract between PowerDsine, Ltd. and Mr. Wang required, as a precondition to Mr. Wang's employment, that Mr. Wang execute a non-disclosure, no competition agreement. Complaint, Exh. C, Para. 10. The Wang Agreement (Complaint, Exh. B), executed by Mr. Wang on September 19, 2004, satisfied the non-disclosure and non-compete agreement precondition set forth in the Wang Contract.

By on or about October 1, 2004, the date on which Mr. Wang began direct employment with PowerDsine, Ltd., Mr. Wang had accepted and agreed to all of the terms of employment offered by PowerDsine, Ltd. On or about October 17, 2004, Mr. Wang acknowledged in writing his previous acceptance and agreement to the terms of PowerDsine, Ltd.'s offer. During the course of his employment, Mr. Wang accepted exposure to PowerDsine's confidential and proprietary Company Information and PowerDsine provided Mr. Wang with compensation in the form of money and other valuable consideration.

Mr. Wang left the employ of PowerDsine, Ltd. in or about February, 2007. Upon information and belief, by in or about Jun., 2007, Mr. Wang began his employment with Broadcom, in direct contravention of Paragraph 5 of the Agreement.

### D.    BROADCOM

Upon information and belief, Defendant Broadcom is a corporation organized under the laws of the State of Delaware with its principal place of business at 5300 California Avenue, Irvine, California 92617. Broadcom is engaged in the highly competitive business of marketing and selling components that provide, among other things, data and voice networking equipment. Broadcom recently entered the PoE market in competition with PowerDsine by designing and supplying integrated circuits, modules and systems and other PoE equipment internationally.

Upon information and belief, Broadcom was aware that PowerDsine's employees, and specifically Mr. McNarney and Mr. Wang, had confidentiality and non-competition agreements. Despite Broadcom's knowledge of the existence of these agreements, Broadcom extended offers of employment to Mr. McNarney and Mr. Wang, thus inducing them to breach their agreements.

## ARGUMENT

In their motion to dismiss, the Individual Defendants argue that this Court does not have personal jurisdiction over them and that as a result, service of process was deficient. Defendants are wrong on both counts.

At the pleading stage, a plaintiff is required to make only a prima facie showing of jurisdiction. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). For purposes of a motion to dismiss, the court must accept as true the allegations of the non-moving party and must resolve all factual disputes in its favor. *CutCo Industries, Inc. v. Naughton*, 806 F.2d at 361, 365, 364 (2d Cir. 1986). The court will "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

## II.    The Individual Defendants Consented To Personal Jurisdiction In This Judicial District

In their memorandum of law ("Def. Memo."), Defendants arguments overlook what is perhaps the most critical and relevant fact regarding the existence of the personal jurisdiction of this Court with respect to the Individual Defendants:  they both ***consented*** to personal jurisdiction. "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d

Cir. 2006). Each of the Individual Defendants agreed to and signed an agreement with a valid, enforceable forum-selection clause. "[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982). "When the parties have agreed to settle disputes in a given forum, there is a strong policy of enforcing such an agreement. *Ramada Franchise Systems, Inc. v. Cusack Development, Inc.*, No. 96 Civ. 8085, 1997 WL 304885 (S.D.N.Y. Jun. 6, 1997). The existence of a valid and enforceable forum-selection clause "obviat[es] the need for a separate analysis of the propriety of exercising personal jurisdiction." *Packer v. TDI Sys., Inc.*, 959 F. Supp. 192, 196 (S.D.N.Y. 1997).

The Second Circuit has held that federal law governs the validity of forum-selection clauses in diversity actions.[2] *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990). "[T]he prima facie validity of forum-selection clauses has been recognized consistently by both the Supreme Court and [the Second Circuit]." *Bear, Stearns & Co., Inc. v. Bennett*, 938 F.2d 31, 32 (2d Cir. 1991). "Unless it is clearly shown that enforcement will be unreasonable and unjust, forum-selection clauses will be enforced." *D.H. Blair*, 462 F.3d at 103; *see also, Jones,* 901 F.2d at 18.

In the Second Circuit, determining whether to enforce a forum-selection clause involves a four-step analysis. *See Phillips v. Audio Active Limited*, 05 Civ. 7017, 2007 WL 2090202, at *3 (2d Cir. Jul. 24, 2007); *D.H. Blair*, 462 F.3d at 103. First, the existence of the clause must be reasonably communicated to the parties; second, the clause must be classified as

---

[2] *See Design Strategy Corp. v. Nghiem*, 14 F. Supp. 2d 298, 300, n. 4 (S.D.N.Y. 1998) ("In any event, applying New York law would not necessarily compel a different result. New York courts have on several occasions applied a similar if not identical standard as found in federal common law.").

mandatory or permissive; third, the court must determine whether the claims and parties involved are subject to the forum-selection clause; and fourth, the Court should determine whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching. *Phillips*, 2007 WL 2090202, at *3. Unless it is clearly shown that enforcement would be unreasonable and unjust, a forum-selection clause will be upheld. *See D.H. Blair*, 462 F.3d at 103.

A.   **Mr. McNarney Consented To Personal Jurisdiction
By Signing An Agreement With An Enforceable Forum-selection Clause**

On November 16, 2004, PowerDsine, Inc. sent Mr. McNarney an offer of employment by letter from its Farmingdale, New York[3] office. Hopkins Decl., Exh. A. The offer letter bears PowerDsine, Inc.'s Farmingdale address and states in pertinent part, "[to] acknowledge your acceptance of our offer of employment, please sign and return to me, no later than November 24th, 2004 . . . (ii) the attached Confidentiality and Non-Competition Agreement that we ask all of our employees to sign . . . . Hopkins Decl., Exh. A, p. 2. The letter further states as follows:

> This letter and your employment hereunder *shall be governed by the laws of the State of New York*. Any dispute relating to this letter and your employment hereunder *shall be adjudicated exclusively before the courts of the State of New York, sitting in Suffolk County and you specifically submit to the exclusive jurisdiction of such courts in connection with the foregoing*. Your consent to this paragraph is a prerequisite for this offer and the employment relationship and you agree not to raise any claim or argument that governing law, jurisdiction and venue is as agreed to herein is not proper or to commence an action in any court other then (sic) as provided herein.

---

[3]   In 2005, PowerDsine, Inc. relocated its offices from Farmingdale, New York to its present location in Melville, New York. At all times, PowerDsine, Inc.'s offices have been located in this judicial district.

Hopkins Decl., Exh. A, p. 2 (emphasis added). This forum-selection clause was reasonably communicated to Mr. McNarney. He had over a week to consider the offer, to seek legal advice or to seek clarification of any of the terms of his offer from PowerDsine. Further, at the time that he was asked to consent to the forum-selection clause, Mr. McNarney was not then a PowerDsine employee and certainly was under no duress to sign the agreement for fear of losing his job or for any other economic reasons. With all of those options open to him, Mr. McNarney accepted the terms of the offer letter, signed it on November 19, 2004 and returned it to PowerDsine in Farmingdale, New York.

On December 18, 2004, a full month after returning his signed offer letter to PowerDsine, Inc., without making any modifications whatsoever, Mr. McNarney signed and returned his Confidentiality and Non-Competition Agreement, which contained a forum-selection clause similar to that of his offer letter:

> 8.   This Agreement *shall be* governed by, construed and enforced in accordance with the laws of the *State of New York the courts of which shall have exclusive jurisdiction* over the subject matter and the parties in connection with any dispute hereunder.

Complaint, Exh. A, para. 8 (emphasis added). Again, Mr. McNarney had ample opportunity to consider the terms of the agreement, specifically the forum-selection clause, to consult with counsel, to seek clarification of the terms from PowerDsine or to reject the terms of the agreement. Yet, once again, Mr. McNarney consented to the personal jurisdiction of this Court. On both occasions, the clause was in its own separate paragraph where it clearly stood out.

## B.   Mr. Wang Consented To Personal Jurisdiction By Signing An Agreement With An Enforceable Forum-selection Clause

The forum-selection clause of Mr. Wang's Agreement meets all of the conditions for enforceability set forth in *Phillips*. Mr. Wang was retained by a contractor of PowerDsine, Ltd. as of September 19, 2004, prior to being offered employment by PowerDsine, Ltd.

Complaint, Exh. B at 1. In that capacity, rather than as a direct employee, Mr. Wang was

presented with a Confidentiality and Non-Competition Agreement containing a forum-selection

clause as follows: "This Agreement shall be governed by, construed and enforced, at the sole

election of the Company at any court." Complaint, Exh. B at 3.

Mr. Wang was not offered direct employment with PowerDsine until October 11,

2004. Thus he had ample time to consider his Agreement, to gain an understanding of the

forum-selection clause, consult with legal counsel and/or to seek clarification about the terms of

his Agreement from PowerDsine. Mr. Wang's October 11 offer letter informed him that the

execution of the Agreement was required prior to his employment:

> 10. Confidentiality matters As a precondition to your employment with the
> Company you must execute a non-disclosure no-competition agreement ("NDA")
> prior to the commencement date of your employment. *A copy of such agreement
> is attached hereto as an Exhibit.*

Complaint, Exh. C at 2 (emphasis added). Thus, before accepting direct employment with

PowerDsine, Mr. Wang had ample time to consider whether he would consent to the forum-

selection clause, consult with legal counsel, seek clarification from PowerDsine or reject

PowerDsine's offer. Having such time and options, Mr. Wang consented to the terms of his

Agreements, including the forum-selection clause, signed his offer letter on October 17 and

returned it to PowerDsine.

### C.     The Forum -selection Clauses Are Enforceable Under The Phillips Analysis

The first step in the Phillips analysis is determining whether the forum-selection

clause was reasonably communicated. Under the facts set forth above, there is no doubt that the

Individual Defendants' forum selection clauses were reasonably communicated to them.

The second step of the Phillips analysis requires a determination of whether the

clause is mandatory or permissive. Regarding Mr. McNarney's Agreement, the exclusive

language "*shall be* governed by, construed and enforced in accordance with the laws of the State of New York the courts of which shall have *exclusive jurisdiction*" in Paragraph 8 is clearly mandatory (emphasis added).  It mandates that the parties may only bring an action arising from the Agreement in the State of New York, that New York law will apply to such an action and that New York is the only place where venue is proper.  A mandatory forum-selection clause is entitled to the presumption of validity.  *Phillips*, 2007 WL 2090202, at *5; *Roby*, 996 F.2d at 1363.  Thus, the second step in the analysis favors enforceability.  As for Mr. Wang, his forum-selection clause is mandatory as well.  *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1276 (2d Cir. 1971) (Defendant manifested consent by signing a contract including a provision permitting judgment to be entered in any court of competent jurisdiction).  *See also*, *Copenhagen Reinsurance Co. (UK) Ltd. v. Sargeant Marine, Inc.*, No. 98 Civ. 1476, 1998 WL 323489, at *2 (S.D.N.Y.) (district court found that the defendant had consented to personal jurisdiction by signing an agreement "providing plaintiffs with 'the right to commence an action in any court of competent jurisdiction in the United States of America.'").  Although the clause in the Wang Agreement allowed PowerDsine the initial right to select an appropriate forum, once PowerDsine did so, it became mandatory for Mr. Wang and for PowerDsine.  As a result, PowerDsine's and Mr. Wang's unequivocal consent to jurisdiction in the Eastern District is mandatory.  *See Ramada*, 1997 WL 304885, at *3.  Thus, the second step of the *Phillips* analysis favors enforceability.

        The third step of the *Phillips* analysis, whether the claims and parties involved are subject to the forum-selection clause, favors enforceability as well.  The parties to the agreements are the parties to this action, respectively.  The claims against the Individual Defendants arise directly from breaches of their agreements, which contain the clauses at issue.

Therefore, the claims against the Individual Defendants are subject to their respective forum-selection clauses.

Finally, the fourth step of the *Phillips* analysis is to ascertain whether the Individual Defendants have rebutted the strong presumption of enforceability by showing that enforcement would be unreasonable or unjust, or that the clause was invalid for fraud or overreaching.  Enforcement of the clauses would not be unreasonable or unjust, nor was fraud or overreaching involved, as will be set forth below.

### D.   Enforcement Of The Individual Defendants' Agreements Will Not Be Unreasonable

There is a narrow exception to the presumption of enforceability of  a forum-selection clause based on unreasonableness:  (1) if its incorporation into the agreement was the result of fraud or overreaching, (2) if the complaining party will for all practical purposes be deprived of his day in court due to grave inconvenience or unfairness of the selected forum, (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy or (4) if the clause contravenes a strong public policy of the forum state (in this case, New York).  *Roby v. Corporation of Lloyds*, 996 F.2d 1353, 1363 (2d Cir. 1993).

First, Plaintiffs note that fraud has not been alleged by Defendants.  No overreaching is involved because the clause is in the agreement for only one purpose:  to provide an exclusive forum for the parties to settle any differences that they may have under the agreements.  Forum-selection clauses are commonly inserted into contracts. *See Corinthian Media, Inc. v. Yelsey,* No. 92 Civ. 0109, 1992 WL 47546, at *3 (S.D.N.Y. Mar. 5, 1992).  In drafting this clause, PowerDsine, Inc. was merely ensuring that if a dispute arose between the parties involving the confidentiality agreements, then the Eastern District of New York, where PowerDsine, Inc.'s headquarters is located, would be the exclusive forum.  This clause was not

included in the Individual Defendants' Agreements for any other purpose and, thus, there was no overreaching involved. This same clause has been offered to all prospective PowerDsine, Inc. employees. The Individual Defendants do not allege, nor can they allege, that they were singled out and asked to sign the Agreement for some other purpose.

Second, the Individual Defendants will not be deprived of their day in court due to grave inconvenience. It is not a grave inconvenience for a California resident to defend a lawsuit in New York. For Mr. Wang, the distance between Taiwan and California versus the distance between Taiwan and New York is only a few hours. Mr. Wang has already retained legal counsel here and he benefits from the fact that he shares counsel with his employer, Broadcom, which is also a party to this action. Moreover, there is no doubt that the Eastern District of New York will be a fair and just forum for all parties.

Third, Plaintiffs will not be left without a remedy in the chosen forum. The law of this forum can provide Plaintiffs with the precise remedy requested. Fourth, nothing about the forum-selection clauses contravene public policy of the State of New York, and Defendants have raised no plausible issue that they do.

*Corinthian Media v. Yelsey* involved a fact pattern similar to the one presently before the Court. In *Corinthian Media*, the plaintiff filed suit in New York against two of its former employees who, at the time, were California residents. Plaintiff alleged that the two former employees breached their confidentiality agreements by soliciting plaintiffs customers and engaging in a business that directly competes with the plaintiff. *Corinthian Media*, 1992 WL 47546, at *1. The former employees argued that the confidentiality agreement that they signed was not binding because their assent to the agreements was obtained by coercion,

wrongful threats and their complete inability to bargain. The defendants in that case moved to dismiss for improper venue and lack of personal jurisdiction, among other things.

The court in *Corinthian Media* disagreed with the defendant employees' contentions. First, the court found nothing in the record to indicate that either defendant was in a position of economic weakness or that they had no meaningful choice other than signing the agreement. Further the court indicated that if defendants found the agreements or the forum-selection clause to have been so undesirable, they could have refused to sign the agreements and left the company to find another job. Further, the court noted that "forum-selection clauses are not generally unconscionable, but are terms commonly inserted in contracts to protect parties from having to litigate disputes in other jurisdictions." *Id.* at *3.

Defendants argue that their forum-selection clauses are not binding because they were not given an opportunity to negotiate it. However, "[a] forum-selection clause can bind contracting parties even when the contract in question is a form contract and not subject to negotiation." *Strategic Mktg. and Communs. v. Kmart Corp.*, 41 F. Supp. 2d 268 (S.D.N.Y. 1998); *Design Strategy Corp. v. Nghiem*, 14 F. Supp. 2d 298, 301-302 (S.D.N.Y. 1998) (refusing to set aside a forum-selection clause contained in a standard employment contract).

## III. This Court Has Personal Jurisdiction Over The Individual Defendants Under New York State Law

A federal court considering a motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction must first apply the law of the state where the court sits to determine if personal jurisdiction over a defendant exists. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). If jurisdiction is established, the court must then determine if the exercise of jurisdiction under state law would violate the defendant's

due process rights. *See Chong v. Healthtronics, Inc.*, No.06 Civ. 1287, 2007 WL 1836831, at *4 (E.D.N.Y. Jun. 20, 2007).

Section 302(a)1 of the New York Civil Practice Law and Rules ("CPLR") provides in relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:  transacts any business within the state or contracts anywhere to supply goods or services in the state.

CPLR 302(a)(1) permits a court to exercise personal jurisdiction over an out-of-state party who transacts any business within New York and if the claim arises from such business transactions. *D.H. Blair*, 462 F.3d at 104.  To meet the transacting business element, it must be shown that the party purposely availed himself of the privilege of conducting activities within New York. *Id.* The "arising out of" element is met by showing a substantial nexus between the transaction of business and the claim. *Id.* at 105.  Both Mr. McNarney and Mr. Wang were employees of PowerDsine, Inc. and PowerDsine, Ltd., respectively, and transacted business within this judicial district subject to their respective confidentiality and non-competition agreements.  The causes of action asserted against Mr. McNarney and Mr. Wang, breach of their confidentiality and non-competition agreements, arise from such transactions.

To determine whether a party has transacted business in New York, courts must look at the totality of circumstances concerning the party's interactions with, and activities within, the state. *D.H. Blair*, 462 F.2d at 105.  Factors that may be considered in determining if a party transacted business in New York are (1) whether the defendant has an ongoing contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York to meet with parties to the contract regarding the relationship; (3) the choice-

of-law clause in the agreement and (4) whether the agreement subjects the defendants to supervision by the corporation in the forum state. *Matera v. Native Eyewear, Inc.*, 355 F. Supp. 2d 680, 684 (E.D.N.Y. 2005).

Both Individual Defendants had an ongoing contractual relationship with the Plaintiffs through their employment agreements and their confidentiality and non-competition agreements. Both Individual Defendants' contracts were executed in New York on the part of the Plaintiffs and, after the agreements were executed, the Defendants visited New York to meet with PowerDsine personnel for training, where they received confidential information. Both parties have choice-of -law clauses in their agreements which now conclude that New York law shall govern. Both Defendants were subject to supervision and/or control from PowerDsine's New York office. The sale of PowerDsine products involves a concerted effort between sales and technical personnel in the field globally, and sales and technical personnel in New York. PowerDsine's New York office is the operating hub for PowerDsine, Inc. and PowerDsine, Ltd.'s sales, manufacturing and technical support teams for the U.S. PoE market. Both Mr. McNarney and Mr. Wang were in constant and routine contact with PowerDsine personnel located in New York by email, telephone and/or videoconference. *See Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, 30 (2d Cir. 1996) (questioning whether, due to email and teleconferencing, personal visits to the forum are still critical).

The Appellate Division of the New York Supreme Court, Second Department recently determined that a nonresident defendant was subject to personal jurisdiction in New York under a fact pattern not too dissimilar to the instant action with respect to a personal jurisdiction analysis. *SmartPros Ltd. v. Straub*, 808 N.Y.S.2d 369 (2d Dept. 2005). In *SmartPros*, the court found that the defendant's systematic, ongoing relationship with a New

York company, with which he was in daily contact due to his employment, just as if his office were physically located in New York, is transacting business in New York sufficient to confer personal jurisdiction. *See also Opticare Acquisition Corp. v. Castillo*, 806, N.Y.S.2d 84 (2d Dept. 2005); *Reiner & Co. v. Schwartz*, 394 N.Y.S. 2d 844 (1977).

Further, Both Mr. McNarney and Mr. Wang admitted to attending PowerDsine sales meetings in New York in connection with their employment. McNarney Aff., paras. 8, 10; Wang Aff., para. 11. These meetings were held in New York because PowerDsine's New York offices are the hub around which PowerDsine's sales and manufacturing is centered. *See* Goren Aff., paras. 13, 14. At those meetings, Mr. McNarney and Mr. Wang gained access to PowerDsine's confidential information and trade secrets. Both Mr. McNarney and Mr. Wang used this confidential information in performing their jobs in their respective geographic areas of responsibility, with all sales and manufacturing efforts being directed towards PowerDsine's New York office through phone calls and emails. As a result, Mr. McNarney and Mr. Wang played crucial roles in PowerDsine's U.S. sales process. In doing so, they purposely availed themselves of the privilege of conducting business here by facilitating sales between PowerDsine's New York hub and the Individual Defendants' respective geographic areas. The revenue generated due to defendants' activities was directed back to New York. Thus, they are subject to personal jurisdiction here under CPLR 302(a)(1). *See SmartPros*, 808 N.Y.S.2d 369.

In *Olympus America, Inc. v. Fujinon, Inc.*, 779 N.Y.S.2d 184 (1st Dept. 2004), the Appellate Division of the New York Supreme Court, First Department decided a case with facts also very similar to this case. In *Olympus*, the defendant was a nonresident employee of a New York company. Although he attended only a few sales meetings in New York during his employment, the court found that "he purposely availed himself of the privilege of conducting

19

business here, projecting himself into local commerce by generating sales between the New York

headquarters and the customers in his territories through the phone calls and e-mails he regularly

made or sent to New York." *Id.* By doing so, the court found, the defendant generated a stream

of local New York commerce from which he earned his livelihood. *Id.* Similarly, Mr.

McNarney and Mr. Wang purposely availed themselves of the privilege of conducting business

here and projected themselves into the local stream of commerce. Mr. McNarney generated

sales between his region and his New York employer. Mr. Wang facilitated sales between

PowerDsine and their customers by serving as a conduit through which PowerDsine's New York

based sales teams, PowerDsine's manufacturers in Asia and PowerDsine's worldwide customers

were able to arrive at the correct product manufacturing specifications. *See* Goren Aff., para. 13.

*See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) ("A single

transaction of business is sufficient to give rise to jurisdiction under C.P.L.R. § 302(a)(1), even

where the defendant never enters the state, if the claim arises out of the transaction.").

      The Second Circuit has also adopted an approach for determining whether an out

of state defendant "transacts business" in New York. *Starlift Logistics, Inc. v. Stacey*, No. 05

Civ. 4162, 2006 WL 2689618, at *2 (E.D.N.Y. 2006). This approach involves the consideration

of a number of factors including the following:

> (1) whether the defendant has an ongoing contractual relationship with a New
> York corporation; (2) whether the contract was negotiated or executed in New
> York and whether, after executing a contract with a New York business, the
> defendant has visited New York for the purpose of meeting with the parties to the
> contract regarding the relationship; (3) what the choice of law clause is in any
> such contract; and (4) whether the contract requires supervision by the
> corporation in the forum state.

*Id.* While *Starlift* is distinguished from this action because in *Starlift* the plaintiff was not a

resident of this forum and did not have a stream of commerce returning to this forum from the

activities of the defendant, such as PowerDsine does, the personal jurisdiction analysis explained in *Startlift* is nonetheless instructive.

Applying the *Starlift* personal jurisdiction analysis, it is clear that this Court has personal jurisdiction over Mr. McNarney and Mr. Wang. As for Mr. McNarney, first, he was a party to an agreement with PowerDsine, Inc., a New York corporation, and enjoyed an ongoing relationship with PowerDsine throughout his employment. Throughout this contractual relationship, PowerDsine provided Mr. McNarney with access to confidential and proprietary information on an ongoing basis. Second, his employment agreement was negotiated and executed in New York by PowerDsine. *See* Goren Aff., paras. 4, 5. After the agreement was executed, Mr. McNarney visited New York for the purpose of meeting with PowerDsine personnel for training, where he received PowerDsine confidential and proprietary information. Third, Mr. McNarney's agreement specifically states that it will be governed by the laws of the State of New York. Complaint, Exh. A at 2. Finally, Mr. Schreiber, Mr. McNarney's direct supervisor, was located in New York, where Mr. McNarney's sales efforts were coordinated and where his sales generated income for PowerDsine. *See* Goren Aff., para. 13. Thus, Mr. McNarney transacted business in New York.

With respect to Mr. Wang, first, he was a party to an agreement with PowerDsine, Ltd. and he enjoyed an ongoing relationship with PowerDsine, Ltd. personnel located at PowerDsine's New York office. Throughout this relationship, Mr. Wang was provided with confidential and proprietary PowerDsine information from PowerDsine, Ltd. and/or PowerDsine, Inc. personnel from New York. Second, Mr. Wang's agreement was drafted and executed in New York by PowerDsine personnel. *See* Goren Aff., paras. 4, 5. Subsequent to execution of his agreement, Mr. Wang traveled to New York where he met with PowerDsine, Ltd. personnel

for sales training (*See* Wang Aff., para. 11), wherein he gained access to PowerDsine

Confidential Information. Third, Mr. Wang's agreement with PowerDsine, Ltd. must be

governed by, construed and enforced under the laws of New York, as the forum that

PowerDsine, Ltd. selected. *See* Complaint, Exh. B, para. 8. And finally, Mr. Wang's sales

efforts were coordinated from New York. *See* Goren Aff., paras. 13, 14. Like Mr. McNarney,

Mr. Wang generated commerce directed back towards this forum and thus transacted business

here. While the Court may consider other factors than those enumerated in *Starlift,* such as those

presented in Section II herein (*See Id.*), it is clear that the Individual Defendants transacted

business in New York.

Considering the totality of the circumstances, Mr. McNarney and Mr. Wang

transacted business in New York and the Plaintiffs' claims arise out of those transactions. Thus

personal jurisdiction exists pursuant to C.P.L.R. 302(a)(1). Further, the constitutional

requirements of personal jurisdiction are satisfied because it is well established that the

application of CPLR 302(a) meets due process requirements. *See D.H. Blair*, 462 F.3d at 105;

*United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir. 1966). Thus, this Court has

jurisdiction over Mr. McNarney and Mr. Wang.

## IV.    Service Of Process Was Procedurally Sufficient As To The Defendants

Defendants' Memorandum of Law does not specify any independent basis for

their alternative motion to quash for insufficiency of service of process other than lack of

personal jurisdiction over Mr. McNarney and Mr. Wang under Federal Rule of Civil Procedure

12(b)(5). Fed. R. Civ. P. 4(k)(1)(A) provides that service of a summons is effective to establish

jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court

of general jurisdiction in the state in which the district court is located. Fed. R. Civ P. 4(e)

provides that service upon an individual may be effected in any judicial district of the United

States pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State.  A copy of the Summons and Complaint in this matter was served on the Individual Defendants as set forth in affidavits of service (D.I. 2 and 4).  Service was accomplished in accordance with the CPLR.  Because this Court has personal jurisdiction over the Individual Defendants, as set forth herein, and service was proper, Defendants' motion to quash should be denied.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss for lack of

personal jurisdiction and to quash for insufficiency of service of process should be denied.

Dated:     August __, 2007
           New York, New York


CHADBOURNE & PARKE LLP

By_____
        Walter G. Hanchuk (WH-7096)
        Dennis C. Hopkins (DH-3767)
        30 Rockefeller Plaza
        New York, New York  10112
        (212) 408-5100

        PowerDsine, Inc.
            David Goren (DG-7760)
        General Counsel
        290 Broadhollow Road, #305
        Melville, NY  11747

        *Attorneys for Plaintiffs*
        PowerDsine, Inc.
        PowerDsine, Ltd.