UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| POWERDSINE, INC. and POWERDSINE, LTD., | ) | Case No. 07-CV-2490 (SJF) (WDW) |
| | ) | |
| Plaintiffs, | ) | ECF Case |
| | ) | |
| -against- | ) | **REPLY MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF INDIVIDUAL** |
| BROADCOM CORPORATION, MARTIN | ) | **DEFENDANTS' MARTIN MCNARNEY** |
| MCNARNEY, and DOUGLAS WANG, | ) | **AND DOUGLAS WANG'S MOTIONS** |
| | ) | **TO DISMISS FOR LACK OF** |
| Defendants. | ) | **PERSONAL JURISDICTION AND TO** |
| | ) | **QUASH FOR INSUFFICIENCY OF** |
| | ) | **PROCESS** |
| | ) | |
| | ) | |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ...................................................................................... 2

    A.    Plaintiffs Fail To Oppose Wang's Arguments That, As A Foreign National, He Should Be Dismissed From This Lawsuit Because It Is Unreasonable, Unfair And Contrary To Law To Subject Him To Jurisdiction In The United States .................................................... 2

    B.    Wang's Purported Forum Selection Clause Is Permissive, Not Mandatory, Thus It Is Facially Unenforceable ........................................ 2

    C.    The Forum Selection Clauses Referenced By Plaintiffs Are Invalid And Unenforceable Under Basic Principles Of Contract Law .............................. 3

        1.    Wang Never Consented To New York As A Forum For This Lawsuit ............................................................................... 3

        2.    PowerDsine-Israel's Purported Forum Selection Clause With Wang Is Ambiguous And Interpreted Against The Company As Its Drafter ............................................................................ 4

        3.    Wang Never Intended To Sign A Contract Subjecting Him To Jurisdiction In New York ..................................................... 5

        4.    Plaintiffs Superseded McNarney's Forum Selection Clauses By Requiring That He Execute Employment Agreements With Microsemi ....................................................................... 6

    D.    Plaintiffs' Purportedly Enforceable Forum Selection Clauses Are Unreasonable, Unjust And Unenforceable ...................................... 8

        1.    Forcing Wang To Defend Against This Lawsuit In New York Would be Gravely Inconvenient and Unfair ........................... 8

        2.    Forcing Wang and McNarney To Defend Against This Lawsuit In New York Would be Fundamentally Unreasonable And Unfair And Would Deprive Each Individual Defendant Of The Remedy of Protections Against Non-Compete Agreements Under Their Own Jurisdiction's Laws ............................................. 9

    E.    This Court Lacks Personal Jurisdiction Over Either Wang Or McNarney Under New York State Law And, Thus, This Case Must Be Dismissed ..... 11

        1.    Plaintiffs Fail To Establish Specific Personal Jurisdiction Over Wang ............................................................................ 12

        2.    Plaintiffs Fail To Establish Specific Personal Jurisdiction Over McNarney ....................................................................... 16

    CONCLUSION ................................................................................. 20

## TABLE OF AUTHORITIES

Page(s)

### CASES

Aloha Group, Inc. v. ITT Commercial Finance Corp., No. 86 Civ. 9890 (RWS),
    1987 WL 17421 (S.D.N.Y. Sept. 16, 1987)..........................................................................4

Application Group, Inc. v. Hunter Group, Inc., 61 Cal. App. 4th 881 (1998)...............................10

Blanco v. Banco Indus. de Venez., S.A., 997 F.2d 974 (2d Cir. 1993)...........................................3

Brooke Group Ltd. v. JCH Syndicate 488 et. al., 87 N.Y.2d 530 (1996).......................................2

Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ..............................13, 15

D'Sa v. Playhut, Inc., 85 Cal. App. 4th 927 (2001)........................................................................8

General Elec. Co. v. Southwest Silicone Co., No. 90-CV-1240, 1991 WL 16022
    (N.D.N.Y. Feb. 5, 1991) ........................................................................................................5

John Boutari and Sons, Wines and Spirits, S.A. v. Attiki Importers and
    Distributors, Inc., 22 F.3d 51 (2d Cir. 1994) ........................................................................3

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ..........................................................8, 9

Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680 (E.D.N.Y. 2005) .................................12, 13

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware, 414 U.S. 117 (1973)................................10

Olympus America, Inc. v. Fujinon, Inc., 8 A.D.3d 76, 77 (1st Dep't 2004) ...........................15, 19

Pavlo v. James, 437 F. Supp.125 (S.D. N.Y. 1977)......................................................................12

Private One of New York v. JMRL Sales & Service, Inc., 471 F. Supp. 2d 216
    (E.D.N.Y. 2007)..................................................................................................................6, 7

Rogen v. Memry Corp., 886 F. Supp. 393 (S.D.N.Y. 1995) ..........................................................5

Segal Co. v. Barton, 612 F. Supp. 935 (S.D.N.Y. 1985) .............................................................12

Starlift Logistics, Inc. v. Stacey, No. 05 Civ. 4162 (NGG), 2006 WL 2689618
    (E.D.N.Y. Sept. 19, 2006)................................................................................................12, 13

UFH Endowment, Ltd. v. Nevada Manhattan Mining, Inc., No. 98 Civ. 5032
    (DAB), 2000 WL 1457320 (S.D.N.Y. Sept. 28, 2000).........................................................3

Unity Creations, Inc. v. Trafcon Industries, Inc., 137 F. Supp. 2d 108 (E.D.N.Y.
    2001) ....................................................................................................................................4, 5

## CODES

California Business & Professions Code Section 16600 ..............................................................10

## OTHER AUTHORITIES

Terrence F. MacLaren, 3 Trade Secrets Throughout The World, § 35:15
(Nov. 2006).............................................................................................................................12

Section 4 of the Basic Law of Israel ..........................................................................................13

## I.      INTRODUCTION

In their attempt to avoid dismissal of this lawsuit by Individual Defendants Martin McNarney ("McNarney") and Douglas Wang ("Wang"), Plaintiffs PowerDsine, Ltd. ("PowerDsine-Israel") and PowerDsine, Inc. ("PowerDsine") (jointly, "Plaintiffs" or the "Company") not only fail to address governing law and critical facts set forth in Defendants' Motions, including the dispositive fact of Wang's status as a foreign national, they also resort to misrepresentations and fabrications to hide the simple truth that no material connection exists between Defendants and New York.  Specifically, Plaintiffs' Opposition relies heavily on the forum selection clauses in two alleged agreements with McNarney and one agreement with Wang, failing to mention, among other things, that Wang never consented to jurisdiction here because his agreement nowhere mentions "New York" and that McNarney's alleged agreements are unenforceable, as they have been superseded and replaced by his new employment with the Company's parent company, Microsemi Corporation, headquartered in Irvine, California.

Plaintiffs should not be rewarded for their manipulation of the facts.  For example, Plaintiffs failed to inform the Court that, as of January 2007, Mr. McNarney was employed by Microsemi Corporation (PowerDsine's parent) - a <u>California</u> corporation  – and <u>not</u> PowerDsine.[1]  This employment was confirmed in a January 9, 2007 letter from Microsemi "officially confirm[ing] the terms of [McNarney's] employment with Microsemi."  Instead of being forthright with this Court and acknowledging such employment and letter, Plaintiffs submit two separate PowerDsine documents relating to McNarney, while selectively omitting any reference to his Microsemi employment.  For all of these reasons and more, as set forth more fully in

---

[1] Plaintiffs' motives for downplaying Microsemi's role in this case are obvious.  That Microsemi is headquartered in California, was McNarney's employer for a significant period, and acquired Plaintiff on or about January 9, 2007, further weakens the New York connections to this case and weighs heavily in favor of dismissal or, at the very least, transfer of this case to California.  <u>See</u> Supp. Todd Decl., ¶ 5, Ex. A.

Defendants' opening briefs and below, the Court should dismiss this action in its entirety as against Defendants McNarney and Wang.

## II.    ARGUMENT

### A.    Plaintiffs Fail To Oppose Wang's Arguments That, As A Foreign National, He Should Be Dismissed From This Lawsuit Because It Is Unreasonable, Unfair And Contrary To Law To Subject Him To Jurisdiction In The United States

Defendant Wang devotes two pages of his opening brief to the argument that, putting all other constitutional and "minimum contacts" analysis aside, it is fundamentally unfair to subject Wang, a lifelong resident of Taiwan, to the unique burdens of defending against claims in a foreign legal system on the other side of the world.  Defs' Opening, p. 13-15.[2]  This is particularly true because Wang was employed only by PowerDsine-Israel and performed his employment for PowerDsine-Israel (with the exception of a single meeting that occurred in New York almost two years ago) from his home base in Taiwan or from PowerDsine-Israel's offices in Israel.  Plaintiffs' attempt to hale Wang into court in this district based on his employment in Taiwan, with an Israeli company, is both not merited and fundamentally unfair.

Notwithstanding, Plaintiffs' silence on the "fairness" question, in the face of Wang's cited cases and arguments, is telling.  Permitting suit against Wang in New York against this backdrop would indeed offend traditional notions of due process and fairness, and for these reasons alone, this lawsuit against Wang should be dismissed.

### B.    Wang's Purported Forum Selection Clause Is Permissive, Not Mandatory, Thus It Is Facially Unenforceable

The forum selection clause signed by Wang is permissive, not mandatory, because "the plain meaning of the words used by the parties to this contract do not manifest an intention to limit jurisdiction to a particular forum."  See Brooke

---

[2] All references to "Defs' Opening" refer to Memorandum of Law in Support of Individual Defendants Martin McNarney and Douglas Wang's Motion to Dismiss for Lack of Personal Jurisdiction and to Quash for Insufficiency of Service of Process, dated July 18, 2007.

Group Ltd. v. JCH Syndicate 488 et. al., 87 N.Y.2d 530, 533 (1996). "The general rule in cases containing forum selection clauses is that [w]hen only jurisdiction is specified the clause *will generally not be enforced* without some further language indicating the parties' intent to make jurisdiction exclusive." See John Boutari and Sons, Wines and Spirits, S.A. v. Attiki Importers and Distributors, Inc., 22 F.3d 51, 52 (2d Cir. 1994) (citation omitted) (emphasis added). The provision signed by Wang, stating only that, "This shall be governed by, construed and enforced, at the sole election of the Company at any court," nowhere indicates any intent to make jurisdiction exclusive to New York, nor does it contemplate jurisdiction in New York in any manner.

The Second Circuit has made clear that the extra protection accorded to mandatory forum selection clauses "is not applicable to a permissive clause which 'contemplates more than one forum'." See UFH Endowment, Ltd. v. Nevada Manhattan Mining, Inc., No. 98 Civ. 5032 (DAB), 2000 WL 1457320, at *4 (S.D.N.Y. Sept. 28, 2000) (citations omitted); see also Blanco v. Banco Indus. de Venez., S.A., 997 F.2d 974, 980, 984 (2d Cir. 1993) (granting motion for dismissal based on inconvenient forum despite permissive choice of forum clause specifying forum chosen by plaintiff). Wang's forum selection clause states that a lawsuit could be filed "at any court," thus contemplating jurisdiction in more than one forum. Thus, Wang's permissive forum selection clause is not entitled to any of the protections described by Plaintiffs and, in fact, should not be enforced.

> **C.    The Forum Selection Clauses Referenced By Plaintiffs Are Invalid And Unenforceable Under Basic Principles Of Contract Law**
>
> > **1.    Wang Never Consented To New York As A Forum For This Lawsuit**

Plaintiffs boldly assert that Wang "*consented* to personal jurisdiction" (emphasis in original) and that his purported consent "is perhaps the most critical and relevant fact

regarding the existence of the personal jurisdiction of this Court." See Pls' Opp. at 8.[3]  If this fact is indeed so critical, then the contrary proposition must also be true -- Wang's failure to consent to jurisdiction in New York should dispose of this lawsuit against him. Wang never consented to jurisdiction in New York, or even in the United States.  See Complaint, Exs. B, C.[4]  No document signed by Wang even mentions the words "New York," "jurisdiction" or even "personal jurisdiction."  Id.  Nor could Wang reasonably have expected to be sued in a New York court, a location approximately 8,000 miles from his home.  See Supp. Todd Decl., ¶ 4.[5]

### 2. PowerDsine-Israel's Purported Forum Selection Clause With Wang Is Ambiguous And Interpreted Against The Company As Its Drafter

PowerDsine-Israel is bound by basic principles of contract interpretation when attempting to enforce a forum selection clause.  See Aloha Group, Inc. v. ITT Commercial Finance Corp., No. 86 Civ. 9890 (RWS), 1987 WL 17421, at * 3 (S.D.N.Y. Sept. 16, 1987).  It is undisputed that Plaintiffs drafted the contracts at-issue, thus all ambiguities in the forum selection clauses are construed against them.  See Goren Aff., ¶¶ 5, 7;[6] Unity Creations, Inc. v. Trafcon Industries, Inc., 137 F. Supp. 2d 108, 111 (E.D.N.Y. 2001) (holding that "because there is an ambiguity in the clause, [this] Court must interpret it against the drafter").

To support the proposition that Wang consented to personal jurisdiction in New York, Plaintiffs rely solely on the following cryptic passage:

> This shall be governed, construed and enforced, at the sole election of the Company at any court.

See Pls' Opp. at 12; Complaint, Ex. B.

---

[3] All references to "Pls' Opp." refer to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue, dated August 9, 2007.
[4] All references to "Complaint" refer to Plaintiffs' Complaint, dated June 20, 2007.
[5] All references to "Supp. Todd Decl." refer to the Supplemental Declaration of Amy K. Todd, dated August 16, 2007.
[6] All references to "Goren Aff." refer to the affidavit of David Goren, Esq., dated August 7, 2007.

This provision is ambiguous on its face.  For a provision to be ambiguous, "it must be susceptible of two reasonable interpretations."  Rogen v. Memry Corp., 886 F. Supp. 393, 396 (S.D.N.Y. 1995).  Here, it is susceptible of more than two interpretations, reasonable and otherwise.  First, the words "governed by" have no object, and read literally state, "This shall be governed by...[construed, and enforced] at the sole discretion of the Company at any court."  See Pls' Opp. at 12; Complaint, Ex. B.  Whatever this phrase may mean, it cannot be interpreted to mean that Wang consented to be governed by the laws of the state of New York.  Second, the parties are well aware of two existing interpretations of this provision, though Wang contends that one is reasonable, while the other is not.  When Wang signed this Agreement, he believed this provision to mean that he could be sued by PowerDsine-Israel in any court in Taiwan, where he lives and where he provided services to PowerDsine-Israel.  See Wang Aff. ¶¶ 2-8.  Plaintiffs contend that this provision means that Wang could be sued anywhere in the world, in any forum of their choosing, apparently regardless of any conceivable link to Wang's employment relationship with PowerDsine-Israel and without regard to the severe prejudice and inconvenience caused to Wang by being haled into court in a foreign country on the other side of the globe.  Wang's interpretation is not only more logical, it carries the weight of the law, as PowerDsine-Israel drafted this agreement ambiguously and it thus must be construed in Wang's favor, against the Company.  See, e.g., Unity Creations, 137 F. Supp. 2d at 111.

### 3. Wang Never Intended To Sign A Contract Subjecting Him To Jurisdiction In New York

"The intent of the parties is the keystone upon which contract formation is locked."  See General Elec. Co. v. Southwest Silicone Co., No. 90-CV-1240, 1991 WL 16022, at *3 (N.D.N.Y. Feb. 5, 1991) (citations omitted).  Wang certainly never intended – and did not foresee – that by signing a provision with his employer in Israel, he would ultimately be faced with defending a lawsuit in New York.  See Wang Aff. ¶¶ 2-8.  If that

is the result PowerDsine-Israel intended, it could have clearly stated that to be the case. PowerDsine, for example, cannot now claim that it only meant courts in New York, or courts in New York and Israel.  That is not what the agreement (drafted by its own lawyer) says.  Surely the parties never had a meeting of the minds on this point, and thus as a basic matter of contract law this provision should not be enforced against Wang.

### 4.  Plaintiffs Superseded McNarney's Forum Selection Clauses By Requiring That He Execute Employment Agreements With Microsemi

Plaintiffs disingenuously rely on McNarney's alleged contracts with PowerDsine, while failing to mention that those contracts were superseded and replaced when Microsemi Corporation, based in Irvine, California ("Microsemi"), acquired PowerDsine and became its parent on or about January 9, 2007.  See Supp. Todd Decl., ¶ 5.  At that time, Microsemi assumed McNarney's employment from PowerDsine, and "confirmed the terms of [McNarney's] employment with Microsemi Corporation."  Id. at Ex. A. Microsemi specifically advised McNarney of all items "related to [his] current position" of employment that "have not changed... [and] will continue..." Id.[7]  Despite the fact that the agreement covered the same subject matter, Microsemi failed to list any non-compete obligations or any forum selection clause purportedly linking McNarney to New York. Id.  Similarly, the new Confidential Information Agreement that Microsemi required McNarney to sign contained no forum selection or non-compete language.  Id. at Ex. B. As such, Microsemi has superseded and replaced McNarney's agreements with PowerDsine and the forum selection clauses referenced by Plaintiffs are unenforceable. Private One of New York v. JMRL Sales & Service, Inc., 471 F. Supp. 2d 216, 223 (E.D.N.Y. 2007).

---

[7] For example, in its offer letter, Microsemi covered such terms as salary, incentive compensation, stock options, health benefits, 401(k) participation, the need to sign Microsemi's confidentiality agreement and an acknowledgement that he had received certain other policies (e.g. non-harassment and code of conduct policies).  In its offer letter, Microsemi was also careful to make clear to McNarney that PowerDsine's medical and dental benefit program would be terminated, as well as its 401(k) program, and that he would now participate in Microsemi's programs.  See Affidavit of Martin McNarney, at Ex. A.

This Court addressed a very similar issue not long ago.  Id.   In Private One, Private One and JMRL were parties to an agreement ("Agreement One") which set forth the terms of a bus manufacturing and sales agreement.  See Id.  Specifically, JMRL agreed, in pertinent part, that it would provide Private One with the first right of refusal on the purchase of prototype buses, the right to purchase additional buses, and a price for said buses.  See Id.  Subsequently, Private One and JMRL negotiated a second agreement ("Agreement Two") that set forth the terms of a bus manufacturing and sales agreement and contained nearly identical terms, yet the parties failed to list any right of first refusal.  See Id.  Shortly thereafter, JMRL refused to sell buses to Private One and, instead, sold the buses at-issue to Private One competitors.  See Id.  Accordingly, Private One filed a lawsuit claiming that JMRL breached the Agreements, without designating whether it alleged breach of Agreement One or Agreement Two.  See Id.  Despite the existence of the right of first refusal in Agreement One, this Court held that Private One could not bring the action pursuant to Agreement One alone, because that agreement was superseded by Agreement Two.  Id. at 223-224 (holding that "under New York law, a subsequent contract regarding the same subject matter supersedes the prior contract" and that "[t]his is true '[e]ven in the absence of an integration and merger clause'") (internal citations omitted).  Thus, the right of first refusal was no longer enforceable.  See Id.

Private One's right of first refusal is no different from PowerDsine's forum selection clause.  When Microsemi assumed McNarney's employment after the acquisition, the second agreement covered the same exact subject matter – McNarney's treatment of confidential information and the terms of his employment - as did McNarney's first employment agreement with PowerDsine, except that the forum selection clause was not contained therein.  As a result, the forum selection clause Plaintiffs purport to assert against McNarney is no longer enforceable.[8]

_____

[8] Because Microsemi did not require McNarney to execute a non-competition agreement, the  non-compete contained in McNarney's former PowerDsine Confidentiality Agreement is similarly unenforceable.  That

**D.      Plaintiffs' Purportedly Enforceable Forum Selection Clauses Are Unreasonable, Unjust And Unenforceable**

As Plaintiffs admit, a <u>mandatory</u> forum selection clause will not be enforced based on unreasonableness if (1) the complaining party will be deprived of his day in court due to grave inconvenience or unfairness of the selected forum or (2) the fundamental fairness of the chosen law may deprive the resisting party of a remedy. <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10-15 (1972). Defendant Wang prevails under both prongs of this test, and Defendant Martin McNarney prevails under prong (2) of this test. Pls' Opp. at 14.

**1.      Forcing Wang To Defend Against This Lawsuit In New York Would be Gravely Inconvenient and Unfair**

As explained in more detail in Wang's opening brief, it is hard to imagine a set of circumstances that better illustrate unfairness and grave inconvenience than Wang's experience here, particularly because Wang could not have foreseen being haled into court in New York in the first place. In a U.S. Supreme Court mandatory forum selection clause case, finding a <u>mandatory</u> (not permissive, like Wang's) forum selection clause enforceable, the Court noted that it was <u>not</u> "dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum" and if that was case, "the serious inconvenience of the contractual forum" to one or both of the parties could carry significant weight "in determining the reasonableness of the forum clause." <u>See</u> <u>M/S Bremen</u>, 407 U.S. at 17.

---

Microsemi, a California corporation based in Irvine, California, would fail to attempt to subject its California employees to non-competes comes as no surprise, as Microsemi should be well aware that non-compete agreements violate the strong public policy of the state of California and that including such a provision would subject it to claims for unfair competition and wrongful termination in violation of public policy. <u>See</u>, <u>e.g.</u>, <u>D'Sa v. Playhut, Inc.</u>, 85 Cal. App. 4th 927, 929 (2001) (holding that an employer "cannot lawfully make the signing of an employment agreement, which contains an unenforceable covenant not to compete, a condition of continued employment.... [A]n employer's termination of an employee who refuses to sign such an agreement constitutes a wrongful termination in violation of public policy.").

Plaintiffs fail to address head-on the issue of Wang's status as a foreign national and the hardships involved to Wang in forcing him to resolve a dispute in a "remote alien forum," the United States.  In fact, Plaintiffs ignore all of the authority relating to Wang's status as a foreign national in his opening brief.  Instead, Plaintiffs claim that it is not a "grave inconvenience" to Wang to be subject to a lawsuit in New York because "the distance between Taiwan and California versus the distance between Taiwan and New York is only a few hours."  Pl. Opp at 15.   Plaintiffs thus rely on a classic straw man argument, creating a position that is easy to refute, then attributing that position to Defendants, who argued no such thing.  The point is not the distance between Taiwan and any location in the United States.  Wang, a foreign national and citizen of Taiwan, working in Taiwan, should not be forced to face a lawsuit in the United States under these circumstances, particularly not where Wang has only set foot in New York on one occasion, almost two years ago.  There is simply no conceivable basis to require Wang to defend against a lawsuit in this district, and, due to the severe inconvenience and unfairness inherent in this situation, Wang should be excepted from any obligations pursuant to a forum selection clause—even the ambiguous, permissive one Plaintiffs seek to enforce here.

    **2. Forcing Wang and McNarney To Defend Against This Lawsuit In New York Would be Fundamentally Unreasonable And Unfair And Would Deprive Each Individual Defendant Of The Remedy of Protections Against Non-Compete Agreements Under Their Own Jurisdiction's Laws**

The purpose of a forum selection or choice-of-law clause is to designate reasonable rules and a location for the parties to resolve disputes.  See, e.g.. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10-15 (1972).  These clauses are not intended to place the parties in any forum world-wide, under any random laws, at the whim of the drafter.  If so, the logical result would be a "race to the bottom," where all employers would simply choose the most employer-friendly forum, thereby subverting all other state

and international laws.  In fact, Plaintiffs' election to sue in New York betrays its blatant attempt to forum shop and win precisely this "race," as the laws of California, Israel, and Taiwan are all more restrictive toward non-compete agreements and protective of employee mobility than New York.

For example, ever since the original adoption of the Field Code in 1872, California Business and Professions Code Section 16600 has provided that:  "[e] xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void."  California state and federal courts, as well as the United States Supreme Court, have long held that section 16600 expresses a "strong public policy of the State of California."  Application Group, Inc. v. Hunter Group, Inc., 61 Cal. App. 4th 881, 900 (1998) ("[S]ection 16600 reflects a strong public policy of the State of California"); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware, 414 U.S. 117, 131, 139 (1973) (in Section 16600, "California has manifested a strong policy of protecting its wage earners from what it regards as undesirable economic pressures affecting the employment relationship").  Plaintiffs should not be permitted to strip other states, such as California, and even other countries, such as Taiwan, from the ability to protect their own employees, living and working under the laws of their jurisdictions.  Such a result would be fundamentally unfair and would deprive both Wang and McNarney of the protections of their own jurisdictions' laws and remedies, as California, Israel and Taiwan disfavor non-compete agreements and provide remedies for employees unavailable under New York law.  See, e.g., Application Group, Inc. v. Hunter Group, Inc., 61 Cal. App. 4th 881 at 900 Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware, 414 U.S. 117, at 131, 139; Terrence F. MacLaren, 3 Trade Secrets Throughout The World, § 35:15(Nov. 2006) (describing Taiwanese District Court case holding that employee non-competition agreement violated the right-to-work provisions of the Constitution and was not enforceable); see also Section 4 of the Basic Law of Israel.

**E.      This Court Lacks Personal Jurisdiction Over Either Wang Or McNarney Under New York State Law And, Thus, This Case Must Be Dismissed**

The essence of Plaintiffs' personal jurisdiction arguments are (1) PowerDsine, Inc. and PowerDsine-Israel maintained an integrated sales process, and by operation of that process both McNarney and Wang necessarily directed revenues to New York (from California and Taiwan, respectively) and (2) on those admittedly few occasions when McNarney or Wang attended meetings in New York, they allegedly received proprietary information relating to their employment.  Despite their strained attempts, Plaintiffs do not provide any evidence to rebut the basic proposition that this lawsuit is brought in New York against two non-New York residents, who have lived for years well outside New York (in California and Taiwan), and who have had only isolated and sporadic contacts, at best, with the state of New York over an extended period of time.  Plaintiffs chose to abandon their efforts to establish general personal jurisdiction over either McNarney or Wang in their opposition brief.  See Pls' Opp.; see Opening Brief at 3, 4.[9] Thus, the sole issue pertaining to personal jurisdiction is whether Plaintiffs can establish specific personal jurisdiction over either McNarney or Wang.  Id.

As set forth in detail in McNarney and Wang's opening brief, to establish jurisdiction under Section 302(a)(1), plaintiffs must demonstrate both that: (1) defendant transacted business in New York; and (2) the cause of action is directly related to, and arises from, the business so transacted.  More specifically with respect to the second prong, specific jurisdiction requires that Plaintiffs establish a "strong nexus" between the Plaintiffs' claim against each Individual Defendant (here, alleged breach of a noncompetition agreement) and either McNarney or Wang's conduct in New York. Defendants analyzed two alleged non-compete cases dealing with non-New York resident

---

[9] All references to "Opening Brief" refer to Defendants' Memorandum of Law in Support of Individual Defendants Martin McNarney and Douglas Wang's Motion to Dismiss for Lack of Personal Jurisdiction and to Quash for Insufficiency of Service of Process, dated July 18, 2007.

defendants in their opening brief; Segal v. Barton and Pavlo v. James.  See Segal Co. v. Barton, 612 F. Supp. 935 (S.D.N.Y. 1985); Pavlo v. James, 437 F. Supp. 125 (S.D.N.Y. 1977).  Both cases dismissed the complaints entirely on the premise that plaintiffs, like the PowerDsine Plaintiffs here, could not establish any nexus between the plaintiffs' claims against each of the individual defendants in their respective cases and the specific conduct of the individual defendants in New York.  Here, significantly, Plaintiffs refuse to address Segal and Pavlo and thus tacitly acknowledge that they cannot colorably dispute that the analyses are dispositive of the specific jurisdiction issues presented here. See Pls' Opp.

Instead of addressing Segal and Pavlo, Plaintiffs set forth four factors used by this Court to determine whether a defendant has "transacted business" in New York: (1) whether the defendant has an ongoing contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York to meet with parties to the contract regarding the relationship; (3) the choice-of-law clause in the agreement; and (4) whether the agreement subjects the defendants to supervision by the corporation in the forum state.  See Starlift Logistics, Inc. v. Stacey, No. 05 Civ. 4162 (NGG), 2006 WL 2689618, at *2 (E.D.N.Y. Sept. 19, 2006); Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 684 (E.D.N.Y. 2005).[10]  However, Plaintiffs' confusing and repetitive attempts to apply the facts of the instant matter to the Starlift and Matera factors resemble attempts to pound triangular pegs into square holes, i.e. Plaintiff's arguments simply do not fit.

### 1.      Plaintiffs Fail To Establish Specific Personal Jurisdiction Over Wang

Plaintiffs' desperate attempts to manipulate the facts surrounding Wang's employment relationship to comport with the Starlift and Matera factors are mind-

---

[10] Plaintiffs' set forth the Starlift and Matera tests as separate and distinct test, but in fact, the tests are identical and nearly verbatim.

boggling.  Simply put, Wang had almost nothing to do with New York, other than the one training session attended by Wang nearly two years ago.  Yet, Plaintiffs attempt to piece together a virtual PowerDsine butterfly effect,[11] claiming that the slightest actions by Wang in Taipei, Taiwan impacted his Israeli employer, which thereby impacted another separately incorporated division conducting business in the United States.  Clearly, such claims fail to meet the "strong nexus" requirement under Section 302(a) or the prongs set forth in <u>Starlift</u> and <u>Matera</u>.

   First, Plaintiffs attempt to demonstrate direct business transactions between Wang and New York by claiming that Wang attended training in New York and that his employment contract was executed in New York.  The truth is that Wang only visited New York <u>once</u> in his lifetime and at that sales meeting, all of his interactions were limited to customer care issues.  Clearly, one visit to New York is insufficient to fulfill the second prong of <u>Starlift</u> or <u>Matera</u>, particularly because the plaintiffs in those cases maintained significant presences in New York.  <u>Starlift</u>, 2006 WL 2689618, at *1 (spending at least 15% of his working time in New York); <u>Matera</u>, 355 F. Supp. 2d at 683; <u>Citigroup Inc. v. City Holding Co.</u>, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (a single transaction is insufficient to avail a defendant to personal jurisdiction unless it directly gives rise to the underlying claim).  Similarly, the claim that <u>Plaintiffs</u> executed Wang's contract in New York is meaningless.  Wang was interviewed by PowerDsine-Israel employees from Israel while he was in Taiwan, he reviewed and considered his job offer in Taiwan, he signed the agreement there, he returned his employment agreements

---

[11] The phrase butterfly effect "refers to the idea that a butterfly's wings might create tiny changes in the atmosphere that ultimately cause a tornado to appear... The flapping wing represents a small change in the initial condition of the system, which causes a chain of events leading to large-scale phenomena."  <u>See</u> http://en.wikipedia.org/wiki/Butterfly_effect.

to Israel, and his supervisor resided in Israel.  Supp. Wang Aff., ¶¶ 5-9, 16.  Moreover,

upon information and belief, Wang's contract was actually executed by Ilan Atias in

Israel.   Id., ¶16.

Acknowledging the impotence of their claims, Plaintiffs attempt to demonstrate

more remote business transactions between Wang and New York by broadly asserting

that Wang was supervised and/or controlled by PowerDsine in New York, claiming that

Wang's sales efforts were coordinated in New York, and that Wang regularly

communicated with PowerDsine in New York via telephone, videoconference, and e-

mail.  Plaintiffs' claims are false.  Wang was supervised by Avigdor Shlomovits in Israel

from in or around August 2003 to July 2005, and then Iris Shuker in Israel from in or

around August 2005 to February 2007.  Id. ¶ 6.  He was never supervised or controlled by

any PowerDsine employees or PowerDsine-Israel employees in New York.  Id.

Similarly, Wang's sales efforts were never coordinated in New York.  Wang's employer,

PowerDsine-Israel, only handled Asian and European customers and all of the

PowerDsine-Israel research and development employees were located in Israel, except

for one person who developed Midspan products in New York.  Id., ¶ 8.  Furthermore,

Wang's sales support work was strictly limited to Taiwan and China.  Id., ¶ 7.  Instead,

PowerDsine in New York and/or California handled clients in the United States.  Id.

Thus, for Europe and Asia, the PowerDsine Manufacturing Operation Team and nearly

all members of the Technical Support Team were located in Israel, and thus sales

coordination took place in Israel.  Id., ¶8.  As a result, and contrary to Plaintiffs' claims,

Wang *never once* placed a phone or videoconference call to PowerDsine personnel

located in New York from Taiwan or China when he worked for PowerDsine-Israel.  Id.,

-14-

¶ 9.  Moreover, Wang received phone calls from PowerDsine in the United States on fewer than five occasions throughout his employment.  Id.  With respect to e-mail, Wang received very few e-mails from PowerDsine in the United States and, typically, was merely included in the cc: field of such e-mails.  Id.

In a final desperate attempt to fabricate business transactions between Wang and New York, Plaintiffs claim vague and attenuated business effects occurring in New York as a result of Wang's work in Taiwan, including claims that the "sale of PowerDsine products involve[d] a concerted effort between... the field globally... [and] personnel in New York," that the New York office was the "operating hub" for all PowerDsine sales, manufacturing, and support, and that the revenue generated by Wang in Taiwan somehow impacted the PowerDsine office in New York.  Pls. Opp. at 18-22.  As an initial matter, Plaintiffs fail to cite any relevant law to support their position that Wang's actions in Taiwan for Taiwanese and Chinese clients can impact commerce in New York.  Id.  The two cases cited by Plaintiffs', Olympus America and Citigroup, are inapposite.  Id. at 19-20; Citigroup, 97 F. Supp. 2d at 561; Olympus America, Inc. v. Fujinon, Inc., 8 A.D.3d 76, 77 (1st Dep't 2004).  Olympus involved a defendant over whom the court claimed personal jurisdiction because his livelihood "originat[ed] in New York based on sales that plaintiff's invoices labeled as New York transactions" and he was also constantly submitting such sales to and communicating with company representatives in New York; a situation distinguishable from both Wang and McNarney's.  Olympus America, 8 A.D.3d at 77.  Citigroup was cited for the proposition that one transaction can give rise to jurisdiction if the claims arise out of that transaction.  Citigroup, 97 F. Supp. 2d at 561. However, the claim in the instant matter involves an alleged breach of contract (the non-

compete) which Plaintiffs' do not – and cannot - claim was breached in New York.  In any event, Plaintiffs' claims misrepresent the operating reality of PowerDsine and PowerDsine-Israel.  For example, the sale of PowerDsine products do not involve "a concerted effort between... the field globally... [and] personnel in New York."  Pls' Opp. at 18.  Instead, as stated above, PowerDsine-Israel handles Asia and Europe, and PowerDsine handles clients within the United States.  Supp. Wang Aff. ¶ 8.  Similarly, the New York office did not serve as an "operating hub" for all PowerDsine sales, manufacturing, and support.  Actually, PowerDsine-Israel has very little to do with New York; all Asian and European orders flow through Israel, as does order fulfillment, manufacturing, and quality assurance.  Id.  For these reasons, as well as the reasons set forth in the Individual Defendants' opening briefs, Plaintiffs fail to establish specific personal jurisdiction over Wang.

> **2.      Plaintiffs Fail To Establish Specific Personal Jurisdiction Over McNarney**

Plaintiffs' attempts to establish specific personal jurisdiction over McNarney are equally unavailing.  First, Plaintiffs attempt to demonstrate direct business transactions between McNarney and New York by claiming that McNarney attended trainings in New York and that his employment contract was executed in New York.  Pls. Opp. at 19-22.  To the contrary, McNarney only visited New York three times for sales training and once for a business meeting, and the PowerDsine meetings that he attended focused largely on administrative training regarding third party sales tracking tools, organizational strategy following Ed Schreiber's departure, basic sales models and strategy, and general overviews of new products and features on existing products largely based on already-public information.  Supp. McNarney Aff., ¶ 10.  At no time

did he learn anything about the technical design or implementation of solutions during any visits to New York.  Id.  Similarly, the claim that Plaintiffs executed McNarney's non-competition agreement in New York is false.  Pls. Opp. at 18.  Plaintiffs never signed McNarney's non-competition agreement at all, as evidenced by the blank signature line attached to Plaintiffs' Exhibit A.  McNarney was interviewed by PowerDsine employees while he was in California, he reviewed and considered his job offer in California, and he performed his job duties in California primarily for Californian clients.  McNarney Aff. ¶¶ 3-20.  These additional circumstances demonstrate that McNarney did not negotiate or execute his employment agreement with PowerDsine in New York.

Failing to demonstrate sufficient business transaction regarding McNarney's visits to New York and the circumstances surrounding his employment agreement, Plaintiffs attempt to demonstrate more remote business transactions between McNarney and New York by claiming that McNarney had a supervisor in New York, claiming that McNarney's sales efforts were coordinated in New York, and that McNarney regularly communicated with PowerDsine in New York via telephone, videoconference, and e-mail.  These claims are false.  After accepting an offer of employment from PowerDsine, McNarney began his employment on or about November 16, 2004, initially reporting to Edward Schreiber in New York.  However, Mr. Schreiber only supervised him until approximately January 2006, at which point he separated from employment with the Company.  Subsequently, McNarney reported to Yuval Barnea in Israel and thereafter, he reported to Jim Gentile of Microsemi in Irvine, California after Microsemi Corporation acquired PowerDsine and PowerDsine-Israel in 2007.  Thus, he

was only supervised in New York for a brief period of time at the beginning of his employment. Similarly, McNarney's communications with PowerDsine in New York via telephone, videoconference, and e-mail were limited as the New York office increasingly became much less important to the Company's overall structure. For example, in January 2006, PowerDsine modified its geographic structure and removed many employees and functions from the New York office. In or around January 2006, PowerDsine opened an office in San Jose, California, where the Vice President of Marketing, Madhu Rayabhari, and the Director of Marketing, Mohan Padmanaban, worked for PowerDsine. Then, on information and belief, in early 2007, PowerDsine human resources, accounting, payroll, and General Counsel David Goren all moved to Microsemi Corporation's offices in Irvine, California. Upon information and belief, only one PowerDsine Field Application Engineer now remains in New York, Pavlick Rimboim. Thus, with the Company's migration to California, McNarney's limited reason to communicate with New York grew even more limited as time passed.

Finally, in a last attempt to fabricate business transactions between McNarney and New York, Plaintiffs claim vague and attenuated business effects occurring in New York as a result of McNarney's work in California, including claims that the "sale of PowerDsine products involve[d] a concerted effort between... the field globally... [and] personnel in New York," that the New York office was the "operating hub" for all PowerDsine sales, manufacturing, and support, and that the revenue generated by McNarney in California somehow impacted the PowerDsine office in New York. Pls. Opp. At 18-22. However, as in Wang's case, Plaintiffs' claims misrepresent the operating reality of PowerDsine. Indeed, McNarney's work selling PowerDsine products

-18-

did not involve a concerted effort between sales and technical personnel in the field globally and sales and technical personnel in New York. Supp. McNarney Aff. ¶¶ 6-9. For clarity, it is important to note that PowerDsine primarily sells two products: IC chips and Midspans. Id., ¶ 6. Although the New York office was heavily integrated into the sales and management process for Midspans (which Broadcom does not sell), McNarney sold IC chips (and continues to do so for Broadcom). Id., ¶ 7. PowerDsine/Microsemi sold IC chips out of California and Israel, not out of New York. Id. Although PowerDsine's sale of products may have required some coordination between sales, marketing, and field application engineers, none of the parties necessary to sell IC chips were located in New York after early 2006, and were not located there when McNarney left his employment with Microsemi in April 2007. Id., ¶¶ 6-9. Specifically, marketing was located in San Jose, the Field Application Engineer, Tamir Reshef, moved to California in or around May 2006, Order Management was located in Israel, McNarney's supervisor was located in Israel, and on occasion, McNarney interacted with Taiwan and India regarding sales. Id., ¶ 7. According to cases cited by Plaintiffs', for McNarney to have "injected himself into local commerce," he would have had to focus more narrowly on New York sales and limit his "livelihood" to this district. Olympus America, 8 A.D.3d at 77. Indeed, as described in detail in McNarney's opening brief, he did no such thing.

Similarly, the New York office did not serve as an "operating hub" for all PowerDsine sales, manufacturing, and support. Actually, during McNarney's term of employment with PowerDsine, neither sales nor manufacturing were centered in New York. Indeed, no PowerDsine manufacturing took place in New York, all manufacturing was controlled from Israel, and the U.S. logistics location was based in Boston,

Massachusetts.  In fact, McNarney testifies in his affidavit that New York was used as a location for Company-wide meetings merely because New York was the most central point where PowerDsine owned office space between California and Israel.  In any event, it is immaterial whether New York was indeed PowerDsine's "operating hub" because McNarney clearly did not work in New York, have significant clients in New York, or otherwise transact business there on any ongoing basis or of any significant sort.  For these reasons, Plaintiffs' fail to establish specific personal jurisdiction over McNarney.

**III.    CONCLUSION**

For all of the reasons given in Defendants' opening memoranda and above, dismissal of this action against Defendants McNarney and Wang should be granted.

Respectfully submitted,

Dated:  August 16, 2007

_____/s/ Ulrico S. Rosales_
Ulrico S. Rosales (*Pro Hac Vice*)
Amy K. Todd (*Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Tel:  (212) 999-5800
Fax:  (212) 999-5899

Attorneys for Defendants
Broadcom Corporation, Martin McNarney &
Douglas Wang