UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

POWERDSINE, INC., and POWERDSINE, LTD.,

                Plaintiffs,

                                                                       **OPINION & ORDER**
                                                                       07-CV-2490 (SJF) (WDW)

        -against-

BROADCOM CORP., MARTIN MCNAREY, and
DOUGLAS WANG,

                Defendants.
---------------------------------------------------------X

FEUERSTEIN, J.

I.    Introduction

    Plaintiffs PowerDsine, Inc. ("PowerDsine USA") and PowerDsine, Ltd. ("PowerDsine Israel," and collectively "Plaintiffs" or "PowerDsine") commenced this action on June 20, 2007 against Defendants Martin McNarney ("McNarney") and Douglas Wang ("Wang," and, together with McNarney, the "Individual Defendants") for breach of confidentiality and non-competition agreements and against Broadcom Corporation ("Broadcom" and, together with the Individual Defendants, "Defendants") for tortious interference with Plaintiffs' contractual relationships with the Individual Defendants. The Individual Defendants move for dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(5). In addition, the Defendants move for dismissal, or, in the alternative, transfer of venue, pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).

    For the reasons set forth below, the motions are granted in part and denied in part.

II.     Background

   A.     The Parties

      1.     PowerDsine & Microsemi

PowerDsine Israel is a corporation organized under the laws of Israel, with its principal place of business in Hod Hasharon, Israel. PowerDsine USA, its wholly-owned subsidiary, is a New York corporation with its principal place of business in Melville, New York. The Plaintiffs design and sell computer hardware. Components designed, produced and sold by Plaintiffs are also incorporated into other products by Plaintiffs' customers who then market the integrated product. Plaintiffs' components permit the system into which they are incorporated to provide data and operating power through the same Ethernet cable. (Complaint ("Compl.") ¶ 8) . In or about October 2006, PowerDsine was acquired by non-party Microsemi Corporation ("Microsemi"), a Delaware corporation with its principal place of business in Irvine, California. (Dyer-Bruggeman Affidavit ("Aff.")).

      2.     Broadcom

Broadcom is a Delaware corporation with its principal place of business in Irvine, California which competes with Plaintiffs. (Compl. p. 2).

      3.     McNarney

McNarney was hired as West Coast Sales Manager by PowerDsine USA in November 2004. McNarney executed a Confidentiality and Non-Competition Agreement on December 18, 2004 (the "McNarney Agreement") which provided: "This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York the courts of which shall have exclusive jurisdiction over the subject matter and the parties in connection with any

dispute hereunder." (Compl. Exhibit ("Exh.") A). In September 2005, he was promoted to the position of Director of Sales for North America.

Following the Microsemi purchase, McNarney executed an Assignment of Inventions and Copyrights and Confidential Information Agreement on January 17, 2007 which did not contain a forum selection clause. He held the position of Director of ICS sales following the Microsemi acquisition until April 2007.[1]

During his career at PowerDsine USA, McNarney worked from California, traveling to New York on four (4) occasions and staying for two to three (2-3) days. Following his promotion in September 2005, he supervised a sales manager who dealt with some New York customers. His payroll checks were issued by the PowerDsine office in New York until about February 2007, when he began to be paid by Microsemi in California.

In early April 2007, McNarney received an offer letter from Defendant Broadcom, and on April 5, 2007, he tendered his resignation to Microsemi and accepted the position of Senior Product Line Manager at Broadcom.

      4.     Wang

---

[1] The Individual Defendants argue that the McNarney Agreement was "superseded and replaced by his new employment" with Microsemi, which acquired PowerDsine in January 2007. (Reply Memorandum of Law in Support of Individual Defendants' [sic] Martin McNarney and Douglas Wang's Motions to Dismiss for Lack of Personal Jurisdiction and to Quash For Insufficiency of Process, p. 1). This argument was not raised in the original motion papers. Mascol v. E&L Transp., Inc., 387 F. Supp. 2d 87, 103 (E.D.N.Y. 2005) ("A court may choose to not consider arguments first raised in reply papers in support of a motion."); see also e.g. RSM Prod. Corp. v. Fridman, 2007 U.S. Dist. LEXIS 58194 (S.D.N.Y. 2007); Playboy Enters, Inc., v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997), aff'd, 159 F.3d 1347 (2d Cir. 1998). In any event, it cannot be said, as a matter of law, that the later agreement's Assignment of Inventions and Copyrights and Confidential Information Agreement superseded the original Confidentiality and Non-Competition Agreement which forms the basis of this action.

Wang was hired by PowerDsine Israel as a consultant in September 2004. On October 17, 2004, he executed a Confidentiality and Non-Competition Agreement (the "Wang Agreement") which provided: "This Agreement shall be governed by, construed and enforced, at the sole election of the Company at any court." (Compl. Exh. B). He was hired as a full-time Application Engineering Manager in November 2004.

During his career at PowerDsine Israel, Wang visited New York once, in October 2005, for a company-wide sales meeting.

In February 2007, after Microsemi acquired PowerDsine, Wang received a letter from Microsemi stating that his refusal to sign a new employment letter amounted to a voluntary resignation. In May 2007, Wang accepted a position with Broadcom in Taiwan.

III.   Personal Jurisdiction

The Individual Defendants move for dismissal for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).[2]

  A.   Standard

The plaintiff bears the burden of establishing jurisdiction. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). A plaintiff may carry this burden "by making a prima facie showing of jurisdiction" Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (citations omitted), through "affidavits and supporting materials[,]" Marine Midland Bank, N.A. v. Miller,

---

[2]Broadcom did not move for dismissal pursuant to FRCP 12(b)(2) or 12(b)(5) and is therefore deemed to have waived any objection based upon lack of personal jurisdiction.

4

664 F.2d 899, 904 (2d Cir. 1981), containing "an averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996); see also Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). Where, as here, the issue is addressed on affidavits, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993).

      B.      Forum Selection Clauses

Plaintiffs argue that the Individual Defendants consented to personal jurisdiction in this Court by executing confidentiality agreements containing forum selection clauses. The Individual Defendants argue that the forum selection clauses are unenforceable or, in the alternative, that enforcement of the clauses would be unreasonable and unjust.

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006); see also National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 (1964) ("parties to a contract may agree in advance to submit to the jurisdiction of a given court"). When such a clause is part of the contract that forms the basis of the action, it "will be enforced, obviating the need for a separate analysis of the propriety of exercising personal jurisdiction." Packer v. TDI Sys., 959 F. Supp. 192, 196 (S.D.N.Y. 1997).

> "Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis. The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. See, e.g., D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006). The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the

5

parties are required to bring any dispute to the designated forum or simply permitted to do so. See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51, 53 (2d Cir. 1994). Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause. See, e.g., Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1358-61 (2d Cir. 1993).

If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. See id. At 1362-63. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust or that the clause was invalid for such reasons as fraud or overreaching.' M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (establishing federal standard relating to enforcement of forum clauses applicable in admiralty and international transactions); see Bense v. Interstate Battery Sys. Of Am., Inc., 683 F.2d 718, 721 (2d Cir. 1982) (applying Bremen standard to contractual dispute between domestic parties in non-admiralty context)."

Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007).

The fact that the forum selection clause was not a negotiated term, as contended by the Individual Defendants is not dispositive. Koninklijke Philips Electronics v. Digital Works, Inc., 358 F.Supp.2d 328 (S.D.N.Y. 2005).

The Individual Defendants do not claim that they lacked notice of the clauses, nor do they argue that the clauses were obtained through fraud or overreaching. Instead, they argue that the clauses are unenforceable or, in the alternative, that enforcement of the clauses would be unreasonable and unjust.

    1.    The McNarney Agreement

The McNarney Agreement provided that: "This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York the courts of which shall have exclusive jurisdiction over the subject matter and the parties in connection with any

dispute hereunder." (Compl. Exh. A).  This clause is mandatory.  Bouteri & Son, 22 F.3d at 51.  And although Defendants' counsel characterizes California law as more favorable towards employees in non-competition agreement litigation, this argument fails to demonstrate that enforcement of the forum selection clause would be unjust or unreasonable.   The forum selection clause in the McNarney Agreement represents McNarney's consent to both jurisdiction in New York courts and to the application of New York law.  Accordingly, McNarney's motion to dismiss for lack of personal jurisdiction is denied.

    2.  The Wang Agreement

 The Wang Agreement provided that: "This Agreement shall be governed by, construed and enforced, at the sole election of the company at any court." (Compl. Exh. B).  Wang argues that the forum selection clause is ambiguous and permissive and that, in any event, enforcement of the clause would be unjust or unreasonable.

 An ambiguous contractual term or phrase is one which is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Sirico v. RIH Acquisitions NJ, LLC, 2006 U.S. Dist. LEXIS 84162 (E.D.N.Y. 2006) (quoting Walk-In Med. Ctrs., Inc. v. Breuer Capital Corp., 818 F.2d 260, 263 (2d Cir. 1987)).  Unlike McNarney's Agreement, the forum selection clause in the Wang Agreement, does not unambiguously indicate that Wang consented to resolve disputes arising from the agreement in any particular forum or submit to the jurisdiction of any court.  Moreover, any ambiguities must be resolved against Plaintiffs as drafters of the Agreement. Albany Savings Bank v. Halpin, 117 F.3d 669 (2d Cir.

1997).

Thus, Wang is correct that the forum selection clause is permissive rather than mandatory. A permissive forum selection clause would not necessarily be void as a jurisdictional predicate if there were some language indicating an intention to be bound by the jurisdiction chosen by Plaintiff. See Alland v. Consumers Credit Corp., 476 F.2d 951, 954 (2d Cir. 1973) (holding that a promissory note which authorizes enforcement in "any court of record in the United States" combined with a waiver of service of process constituted consent to New York federal court jurisdiction). Such language is not present here.

Thus, Wang has demonstrated the unenforceability of the forum selection clause in his agreement and Wang's motion to dismiss the complaint for lack of personal jurisdiction based upon the forum selection clause is granted.

C.    Wang's 12(b)(2) Motion and CPLR 302(a)(1)

Since Wang is not subject to personal jurisdiction pursuant to the forum selection clause in his employment agreement, his 12(b)(2) motion must be considered in light of his contention that he was not otherwise subject to the jurisdiction of this court at the time the lawsuit was filed. Klinghoffer v. SNC Achille Lauro Ed Attri-Gestione, 937 F.2d 48 (2d Cir. 1991).

In determining a motion to dismiss a complaint under Fed., R. Civ. P. 12(b)(2) for lack of personal jurisdiction, a federal court must first apply the law of the state where the court sits to determine if personal jurisdiction over a defendant exists. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999). See also Chong v. Healthtronics, Inc. No. 06 Civ. 1287, 2007 WL 1836831, at *4 (E.D.N.Y. June 20, 2007).

Section 302(a)1 of the New York Civil Practice Law and Rules ("CPLR") provides in

relevant part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state.

The transaction of business, upon which Plaintiff alternatively relies to establish personal jurisdiction over Wang, requires a showing that Wang purposely availed himself of the privilege of conducting activities within New York. D.H. Blair, 463 F.3d 95 (2d Cir. 1995). The "arising out of" element is met by showing a substantial nexus between the transaction of business and the claim. Id. At 105.

To determine whether a party has transacted business in New York, courts examine the totality of circumstances including: (1) whether the defendant has an ongoing contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York to meet with parties to the contract regarding the relationship; (3) the choice-of-law clause in the agreement and (4) whether the agreement subjects the defendants to supervision by the corporation in the forum state. Matera v. Native Eyewear, Inc., 355 F.Supp.2d 680, 684 (E.D.N.Y. 2005).

Mr. Wang, a resident of Taiwan, traveled to New York on only one occasion in 2005. (Wang Aff. ¶ 8). He worked for, and entered into an employment agreement with PowerDsine, Ltd. in Israel. His supervisors were located in Israel. His clients were in Asia or Europe. (Id. ¶ 7). He received fewer than five telephone calls from the New York office, and e-mails he received were courtesy copies. (Id. ¶ 9). Moreover, the offer of employment "required" that Mr.

Wang provide "customer-care and pre-sales services <u>exclusively</u>" to the Israeli PowerDsine, Ltd.'s customers and potential customers. (Compl., ¶ 30, emphasis in original).

Thus, Plaintiffs have failed to demonstrate *prima facie* a systematic, ongoing relationship with a New York company sufficient to confer personal jurisdiction over Wang.

The complaint against Wang is therefore DISMISSED.

D. Insufficiency of Process

The Individual Defendants move, in the alternative, to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(5). Since McNarney is deemed to have submitted to the jurisdiction of the court, based upon the forum selection clause in his agreement, his motion is denied. Since Plaintiffs have failed to demonstrate personal jurisdiction over Wang against whom the complaint is dismissed, no further discussion of this issue is necessary.

IV. Venue

Defendants move to dismiss the instant matter based on improper venue, or, in the alternative, transfer venue of the matter to the United States District Court for the Central District of California pursuant to Fed. R. Civ. P. 12(b)(3), 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).

A. Motion to Dismiss for Improper Venue

Since the complaint against Wang is dismissed, only McNarney's and Broadcom's arguments will be considered on this issue.

1. McNarney

By agreeing to the language of the mandatory forum selection clause in his Agreement, McNarney has waived his right to contest venue as improper. <u>Remsen Funding Corp. v. Ocean</u>

W. Holding Corp., 2007 WL 3254403 (S.D.N.Y. 2007) (citing Phillips, 494 F.3d at 386; see also Hoffman v. Blaski, 363 U.S. 335, 343 (1960) ("venue, like jurisdiction over the person, may be waived").  Thus, McNarney's motion to dismiss for improper venue is denied.

    2.    Broadcom

Broadcom is not a party to any agreement that would constitute a waiver of venue, thus, its motion for improper venue must be considered on its merits.

    a.    Standard

For the purposes of a motion to dismiss for improper venue pursuant to Rule 12(b)(3), a district court, "accept[ing] the facts alleged in the complaint and constru[ing] all reasonable inferences in the plaintiff's favor," Fisher v. Hopkins, 2003 U.S. Dist. LEXIS 307 (S.D.N.Y. 2003) (citations omitted), must assess whether the action was filed pursuant to the requirements of 28 U.S.C. §1391, which provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

As neither of the remaining Defendants resides in New York, venue cannot be established in the Eastern District of New York under 28 U.S.C. § 1391(a)(1).  Remaining Defendants Broadcom and McNarney reside in the Central District of California.

Plaintiffs do not allege events giving rise to the claim against Broadcom which occurred in New York.  See e.g. United States Surgical Corp. v. Imagyn Med. Techs., 25 F. Supp. 2d 40,

43 (D. Conn. 1998) (venue improper since no substantial part of events occurred in Connecticut where tortious interference with Connecticut employment contract occurred in California).

Pursuant to § 1391(a)(3) venue is proper in any district "in which any defendant is subject to personal jurisdiction at the time the action is commenced," only "if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3); Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 434-435 (2d Cir. 2005) ("venue may be based on[28 U.S.C. § 1391(a)(3)] only if venue cannot be established in another district pursuant to any other venue provision"); Doctor's Assocs. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996). However, because venue is proper in California pursuant to § 1391(a)(1) and (2), § 1391(a)(3) does not apply. Thus, venue in New York is improper as to Broadcom.

Upon a finding of improper venue a court may dismiss or transfer the action. 28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The decision to dismiss or transfer lies within the sound discretion of the district court. Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993); Starlift Logistics, Inc. v. Stacey, 2006 U.S. Dist. LEXIS 66942 (E.D.N.Y. 2006).

Based upon the foregoing, the complaint against Broadcom is transferred to the Central District of California.

B.      Motion to Transfer Venue

The Individual Defendants move, in the alternative, to transfer the instant matter to the Central District of California, pursuant to 28 U.S.C. § 1404(a), which provides that:

12

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

A plaintiff's choice of forum is entitled to considerable weight, and should be honored unless the balance of factors weigh strongly in favor of the defendant. Matera, 355 F. Supp. 2d at 687. The moving party bears the "burden of making out a strong case for a transfer." Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950); Matera, 355 F. Supp. 2d at 687. The decision to transfer is within the discretion of the district court. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'").

A court considering a motion pursuant to §1404(a) must determine "(1) whether the action could have been brought in the proposed transferee forum; and (2) whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." Hilti AG v. Milwaukee Elec. Tool Corp., 2004 U.S. Dist. LEXIS 16373 (E.D.N.Y. 2004).

   1. Whether the Action Could Have Been Brought in the Central District of California

Plaintiffs argue that, notwithstanding the other § 1391(a) factors, venue in the Central District of California would be improper because the forum selection clause in the McNarney Agreement "mandates that the proper forum must be the Eastern District of New York." (Memorandum of Law in Opposition to Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue, p. 16). However, an enforceable forum selection clause requiring venue to be

13

brought elsewhere does not render venue in another forum improper, as long as the proposed alternate forum meets the statutory prerequisites for venue. Smith v. Commodore Cruise Line Ltd., 124 F. Supp. 2d 150, 156 (S.D.N.Y. 2000); see also Haskel v. FPR Registry, 862 F. Supp. 909, 915 (E.D.N.Y. 1994) (forum selection clauses do not render venue improper). This Court has already determined, *supra*, that, but for the forum selection clause in McNarney's Agreement, venue would be proper in the Central District of California under § 1391(a)(1). Thus, the action could have been brought there.

    2.    Other Factors

In determining whether a proposed transfer is for "the convenience of the parties and witnesses" or "in the interest of justice," courts look to a number of factors, including (1) the plaintiff's choice of forum, (2) the convenience of witnesses and parties, (3) the locus of operative facts and proof, and (4) the relative means of the parties. See e.g. D.H. Blair, 462 F.3d at 106-107.

    a.    Plaintiff's Choice of Forum

A plaintiff's choice of forum is entitled to considerable weight, and should be honored unless the balance of factors weigh strongly in favor of the defendant. Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 687 (E.D.N.Y 2005). Weighing heavily in Plaintiffs' favor is the mandatory forum selection clause in the McNarney Agreement. A forum selection clause "will be a significant factor that figures centrally in the district court's calculus," though it is not "dispositive." Stewart, 487 U.S. at 29. Thus, this factor weighs strongly against transfer for McNarney.

    b.    Convenience of Witnesses and Parties

In determining the convenience of the parties, "the logical starting point is a consideration of the residence of the parties." Frasca v. Yaw, 787 F. Supp. 327, 331 (E.D.N.Y. 1992). In the instant matter, McNarney and Broadcom are located in California. (McNarney Aff.; Wang Aff.; Dyer-Bruggeman Aff.). However, PowerDsine USA is located in Suffolk County and PowerDsine Israel is located in Israel. Although the Broadcom trial will not be held here, "piecemeal litigation" does not warrant a transfer of the claim against McNarney. See Phillips, 494 F.3d at 393.

      c.  Locus of Operative Facts and Proof

The operative facts for a matter arising out of a contract are "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Oubre v. Clinical Supplies Management, Inc., 2005 WL 3077654 (S.D.N.Y 2005). McNarney's contract was to be performed largely in California, and the alleged breach of his contract occurred there as well. However, the "proof" in question would consist largely of paper and electronic records. Thus, this factor is neutral as to transfer.

      d.  Relative Means of the Parties

Plaintiffs are multinational technology corporations, recently acquired by Microsemi, a one billion eight hundred million dollar ($1,800,000,000.00) public company. McNarney Aff. Defendant McNarney earns approximately one hundred fifty-eight thousand five hundred dollars ($158,500.00) per annum. Broadcom is also a large multinational public corporation. Goren Aff. Nevertheless, because McNarney is of limited means, this factor weighs modestly in favor of transfer.

15

         3.      Conclusion

Although some factors weigh in favor of a transfer, the Plaintiffs' choice of forum, bolstered by the presence of a mandatory forum selection clause in the McNarney Agreement, must be accorded due consideration. Accordingly, it would not be in the interest of justice to transfer the instant matter to the Central District of California, and Defendant McNarney's motion for transfer is accordingly DENIED.

V.      Conclusion

For the foregoing reasons, Defendant Broadcom's motion for dismissal or transfer for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) is GRANTED, and Plaintiffs' claims as to Defendant Broadcom are transferred to the Central District of California. Defendant Wang's motion to dismiss is GRANTED. Defendant McNarney's motions are DENIED.

IT IS SO ORDERED.


_____S/sjf_____
Sandra J. Feuerstein
United States District Judge

Dated: January 29, 2008
       Central Islip, New York

16

Copies to:

| **Counsel for Plaintiffs** | **Counsel for Defendants** |
|---|---|
| Dennis C. Hopkins | Amy K. Todd |
| Chadbourne & Parke LLP | Wilson Sonsini Goodrich & Rosati, P.C. |
| 30 Rockefeller Plaza | 1301 Avenue Of The Americas, 40th Floor |
| New York, NY 10112 | New York, NY 10019 |
| (212)408-5433 | 212-999-5800 |
| Fax: (212)541-5369 | Fax: 212-999-5899 |
| Email: dhopkins@chadbourne.com | Email: atodd@wsgr.com |
| | |
| Walter G. Hanchuk | Ulrico S. Rosales |
| Chadbourne & Parke LLP | Wilson Sonsini Goodrich & Rosati |
| 30 Rockefeller Plaza | 650 Page Mill Road |
| New York, NY 10112 | Palo Alto, CA 93404 |
| 212-408-1129 | 650-493-9300 |
| Fax: 646-710-1129 | Fax: 650-565-5100 |
| Email: whanchuk@chadbourne.com | Email: urosales@wsgr.com |
| | |
| | Michelle J. Shapiro |
| | Wilson Sonsini Goodrich & Rosati, PC |
| | 1301 Avenue of the Americas |
| | 40th Floor |
| | New York, NY 10019-6003 |
| | 212-497-7720 |
| | Fax: 212-999-5899 |
| | Email: mshapiro@wsgr.com |